HARRISON JOHNSON AND WIFE, PLAINTIFFS IN ERROR, V. W. J. HAHN, COUNTY TREASURER, DEFENDANT IN ERROR.

1. **Taxes**: CONSTRUCTION OF STATUTES : DUTY OF COUNTY TREASURER. A failure on the part of the county treasurer to first exhaust the personal property of a delinquent tax payer, under the act of June 6, 1871, (Gen. Stat., 916), renders a sale of the realty illegal and void.

2. ——— : ENJOINING SALE. Equity will enjoin the sale of realty for taxes, under the statutes of this state, if the owner has personal property out of which such taxes can be collected.*

ERROR to the Douglas county district court.

On the fourth day of September, 1871, the plaintiffs in error commenced suit against the defendant in error to restrain the sale of certain real estate which the defendant as county treasurer offered for sale for the taxes of 1870. The petition alleged, that from the time such tax became due the plaintiffs had and still have an abundance of personal property in the county of Douglas, out of which the tax could have been made. It was also alleged, that in the year 1869, the county commissioners submitted to the electors of the county, a proposition to issue the bonds of the county to the Omaha and Northwestern and the Omaha and Southwestern Railroad Companies, to a certain amount; that upon canvass of the votes polled at said election, the said commissioners declared the proposition carried, and in January, 1870, issued the bonds to said railroad companies; that a part of the tax for which the land of plaintiffs was offered for sale, was to pay the interest on said bonds, and that the levy of such tax was unauthorized by law, illegal, and void. Various irregularities in respect to the proceedings of the assessor, and in respect to the proceedings of the county commissioners were also alleged in the petition.

* Overruling, *Hallenbeck v. Hahn*, 2 *Neb.*, 377.—REPORTER.

The defendant filed a general demurrer, which was sustained by the district court, and judgment dismissing the petition having been entered the cause was brought here by petition in error.

At the time of filing the petition in the court below, the legislative acts relative to the collection of taxes were as follows:

"Sec. 49.   No demand of taxes shall be necessary, but it shall be the duty of every person subject to taxation under the laws of this state, to attend at the treasurer's office, at the county seat, and pay his taxes, and if any person neglect so to attend and pay his *personalty* taxes, until after the first day of May next succeeding the levy of the tax, the treasurer is directed to levy and collect the same, together with the costs of collection, by distress and sale of personal property belonging to such person, in the manner provided by law for the levy and sale of property on execution, and the treasurer shall be entitled to the same fees for services as are allowed by law to sheriffs for selling property under execution." *Laws of* 1869, 199.

"Sec. 50.   On the first day of May of the year after which taxes shall have been assessed, all unpaid *state, county, school, precinct, city, and village taxes, except city* taxes *in cities of the first class,* shall become delinquent, and shall draw thereafter one per cent. per month interest, *which interest shall be collected the same as the tax so due, and it shall be the duty of the county treasurer, or any other person charged with the collection of delinquent taxes, to proceed as soon after the first day of May, as practicable, to make such delinquent tax out of the personal property of such delinquent, if any such property can be found; and this provision shall apply as well to the taxes assessed on real estate, and remaining unpaid, as to delinquent taxes assessed on personal property, and the remedy to be pursued shall*

*be the same as provided in sections forty-nine and fifty-two of this act; and the treasurer shall be entitled to five per cent. additional compensation for making such collections, to be paid by such delinquent, and also the fees now prescribed by law." Laws of* 1871, 81.*

" SEC. 51. Taxes upon real property are hereby made a perpetual lien thereupon, *commencing from the first day of March of the current year*, against all persons and bodies corporate, except the United States and this state." *Laws of* 1871, 82.*

" SEC. 52. When the treasurer distrains goods, he may keep them at the expense of the owner, and he shall give notice of the time of their sale, within five days after the day of the taking, in the manner that constables are required to give notice of the time of the sale of personal property on execution; and the time of the sale shall not be more than ten days from the day of the taking; but he may adjourn the sale, from time to time, for a period not exceeding three days, and shall adjourn once at least when there are no bidders; and in case of an adjournment, he shall put up a notice thereof at the place of sale." *Laws of* 1869, 200.

" SEC. 54. Whenever, in the collection of any district, town, city, or local tax, which may have been levied according to law, the collector is not able to make the tax by *distress and sale of personal property*, and real estate is to be sold for the same, it shall be the duty of the collector of the tax to send such delinquent list to the county treasurer on or before the fifteenth day of July of each year, and the county treasurer shall receive the delinquent list, and advertise the same at the same time he advertises the sale of real estate for delinquent taxes, as hereinafter provided."

---

* These sections are amendatory of sections 50 and 51 of the act of 1869, page 199.   The amendments consisting of that part in italics.—REPORTER.

*G. W. Ambrose* and *E. Estabrook*, for plaintiffs in error, and *J. M. Woolworth*, intervening on behalf of parties holding bonds issued by counties to railroad companies, made substantially the same arguments as in *Hallenbeck v. Hahn*, 2 *Neb.*, 377.

*J. C. Cowin*, for defendant in error.

An injunction will not lie to restrain the collection of a tax upon the facts stated in plaintiffs' petition.

1. The burden of proof is on the plaintiff, and he must point out and establish the errors or defects upon which he grounds his claim to have the proceedings set aside, and if he fails to do so a court of equity will not interfere. *Bloodgood v. M. & H. R. R. Co.*, 18 *Wend.*, 32.

2. There has been such laches on the part of the plaintiff, in making no objection to the issue of said bonds, and permitting them thus to go into the hands of bona fide holders, that a court of equity will not now grant the relief prayed. *Kellogg v. Ely*, 15 *Ohio State*, 64.

3. A court of equity will not restrain the collection of an illegal tax on the ground that it is a lien on real estate and will cast a cloud upon the title, if the invalidity of the tax appears on the face of the proceedings to impose it, and no extrinsic evidence is requisite to show such invalidity. *Dows v. The City of Chicago*, 11 *Wall.*, 108. *Susquehanna Bank v. Supervisors of Broome Co.*, 25 *New York*, 314.

4. Nor will a court of equity restrain the collection of a tax, where the injury caused by the injunction will be greater than the benefit to plaintiff. 33 *Conn.*, 404. 14 *New Jersey Equity*, 452. 16 *Id.*, 442. 17 *Id.*, 114.

5. Where the statute provides a remedy, a court of equity will not interfere. *Macklot v. The City of Dav-*

*enport*, 17 *Iowa*, 379.   *Brewer v. City of Springfield*, 97 *Mass.*, 154.   *Lash v. Adams*, 10 *Cush.*, 252.

6.   Plaintiff has a remedy under the statute.   *General Statutes*, 924, *Sec.* (70.)

GANTT, J.

The questions raised by the allegations of the petition in respect to the issuance of the county bonds to the railroad companies, and in regard to the irregularities in the proceedings of the assessor and county commissioners, it is deemed not necessary to now bring into review in this court.   The demurrer admits that the plaintiffs had, at the time the tax became due, and still have, sufficient personal property, out of which the tax could have been made, and the important question now for consideration is, is such a showing of personal property, owned by the plaintiffs, sufficient ground to restrain the sale of their real property, until this personal property is first exhausted?   It is true, section forty-nine of the act of February 15, 1869, provides that if any person neglects to pay his *personalty* tax, the treasurer shall collect the same by distress and sale of personal property; but section fifty-four, however, provides that when in the collection of any town, city or local tax, the collector is *not able to make the same by distress and sale of personal property*, he shall send the delinquent list to the county treasurer, where it is to be collected in the manner set forth in that section.   Section fifty-one makes taxes upon real property a lien thereon, without any distinction as to whether such tax is general or local, and then follows section fifty-two, which without any limitation of taxes upon real or personal property, provides that when goods are distrained, the treasurer may keep them at the expense of the owner until the sale of them, and further provides the manner in which the sale shall be made. This last section hardly seems to stand as an addendum

to section forty-nine, for it is general in its terms, and when taken in connection with section fifty-four, and the object and purpose of the revenue laws, viewed in the light of the rules of the common law in regard to the liability of lands for the payment of debts, it would seem pretty clear that the legislative intention was to first exhaust the personal property of the tax payer in the collection of taxes.

It is said that it is the policy of the law to resort to the land itself, only when all other remedies fail to enforce a satisfaction of the tax. And it would hardly be just to charge the legislature with the inconsistency of providing that in some cases the taxes upon realty should be made by distress and sale of personal goods, while in other cases, the payment of such taxes should, in the first instance, be enforced by the sale of real estate. It is not the duty of courts to so construe statutes. It is said that "statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the legislature intended to make innovations upon the common law further than the case absolutely requires. This has been the language of courts in every age." 1 *Kent Com's*, 464. *Barry v. Mandell*, 10 *Johns.*, 586. And it has always been the doctrine of the common law to protect the domicile of the subject or citizen. By the common law only goods, chattels, and profits of lands could be taken on execution. 2 *Roll.*, *Abr.*, 475. 2 *Bac.*, *Abr.*; 686. And ever since lands by statute were first made liable to execution for the payment of debts, it was and still is the rule, that the personal property of the debtor must be exhausted before his real estate can be taken. It is not, therefore, to be presumed that the legislature, in providing for the collection of taxes, have so greatly departed from the long settled rules of the law. Would a fair construction and precise observance of the require-

Johnson v. Hahn.

ments of the act of 1869, require such a departure from the rules of law which has protected the real property of the subject and citizen in all ages of the world's history, where mankind have pretended to be governed by law?

It is "laid down as a universal rule in the collection of taxes assessed upon lands of residents, that the person or personal estate of the delinquent is the primary fund out of which the tax must be paid," and that this rule can only be changed by positive statutory law. *Blackwell on Tax Titles*, 171.

But however much any person may doubt the power of the treasurer, under the act of 1869, to first exhaust the personal property of the delinquent tax-payer in the county, there can be no doubt that under the first section of the act of June 6, 1871, which is amendatory of section fifty of the act of 1869, it is his imperative duty to do so. The tax stated in the petition became delinquent May 1, 1871, and the amendatory section makes it *the duty of the county treasurer*, as soon after the first day of May as practicable, to make the delinquent tax out of the personal property of the delinquent, and this provision applies to taxes assessed on real estate, and remaining unpaid, as well as to delinquent taxes on personal property. *General Statutes*, 916.

The act of June 6, 1871, took effect and went into force three months prior to the time fixed for the sale of the lands of the plaintiffs, and nearly two months before their lands were advertised for sale, and there is no saving clause in the act. So, if it be assumed that the act of 1869 required the sale of real estate for the payment of delinquent taxes, without first exhausting the personal property of the tax-payer in the county, then it is clear that such provision of that act, if not in direct terms, was by implication repealed by the act of 1871—some two months before the lands of plaintiffs were advertised for sale by the defendant.

10

It is said in *New London R. R. Co. v. Boston and Albany R. R. Co.*, 102 *Mass.*, 389, that " the law does not indeed favor a repeal by implication, but a later statute, containing provisions, though merely affirmative, plainly repugnant to those of the former statute, repeals it as absolutely as by a negative clause." *Goodyear v. Boston*, 20 *Pick.*, 410. *Whitney v. Blanchard*, 2 *Gray*, 208. Even the jurisdiction of a superior court may be ousted by necessary implication as well as by express terms. *Cole v. Knight*, 3 *J. R.*, 442. *Crisp v. Burberry*, 8 *Bing.*, 394. And in the case of *Pierpont v. Crouch*, 10 *Cal.*, 316, it is held that such repeal may be by implication as well as in direct terms, and that where two acts are passed at different times, not in terms repugnant, yet if it is clearly evident that the last one was intended as a revision or substitute of the first, it will repeal the first to the extent in which its provisions are revised or substituted. *Daviess v. Fairbrain*, 3 *Howard*, 636. *Sullivan v. The People*, 15 *Ill.*, 233. *Leighton v. Walker*, 9 *New Hamp.*, 59. *Dexter v. Allen*, 16 *Barb.*, 18. *Commonwealth v. Kimball*, 21 *Pick.*, 376. *Harrison v. Walker*, 1 *Kelly*, 32. *Sedg. on Stat. and Const. Law*, 2d *Edition*, 104. So in *Key v. Goodwin*, 4 *Moore and Payne*, 341, 351, Tindall, C. J., says, that " the effect of a repealing statute I take to be to obliterate the statute repealed as completely from the records of parliament as if it had never passed, and that it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, and concluded while it was an existing law." *Sedg. on Stat. and Const. Law*, 2d *Edition*, 108. *Williams v. County Commissioners*, 35 *Maine*, 348. *Butler v. Palmer*, 1 *Hill*, 333. *Underwood v. McDuffee*, 15 *Mich.*, 367. *Surtees v. Ellison*, 4 *Maul. & Sel.*, 586. The effect of such clause on a previous statute which imposes a pen-

alty, or confers jurisdiction, even in civil cases, is not denied. In the first case the penalty is gone, though the repeal takes place while the prosecution for it is pending. *Yeaton v. The United States*, 5 *Cranch*, 281. *Rachel v. The Same*, 6 *Id.*, 329. *United States v. Passmore*, 4 *Dall.*, 372. *Commonwealth v. Kimball*, 21 *Pick.*, 375. In the latter, although the party may have instituted suit, and it be pending at the time of the repeal, the jurisdiction is gone, and with it all his rights. 1 *W. Black.*, 451. *Stœver v. Innell*, 1 *Watts*, 258.

According to these well established rules of construction of statutes, it is clear that the act of June 6, 1871, obliterated as completely from the records of the statutes as if the same had never existed, all authority, whether assumed by construction or given in direct terms, which the treasurer prior to that time had by statute, to sell real estate for taxes, without first exhausting the personal property of the tax payer. In the language of this last act, "*it shall be the duty* of the county treasurer" or person charged with the collection of the delinquent taxes, to proceed and make such tax out of the personal property of such delinquent; and so long as a sufficient amount of such personal property can be found in the county, and be distrained and sold for such tax, a sale of the land would be illegal and absolutely void. *Catterlin v. Douglas*, 17 *Ind.*, 214. *Rathburn v. Acker*, 18 *Barb.*, 333. *Dallam v. Oliver's Executors*, 4 *Gill*, 446. *Gouveneur v. Mayor of New York*, 2 *Paige, Ch.*, 437. *Jackson v. Sheppard*, 7 *Cow.*, 89. *Parker v. Smith*, 4 *Blackf.*, 70.

The express purpose of the statute is, and it seems to be the universal rule of law unless changed by positive statute, that if coercive measures become necessary they shall, in the first instance, be directed to the personal property, and the real estate on which the tax is imposed shall not be resorted to, until the personal

property is first exhausted; and this requirement of the law must be strictly pursued. In *Thacker v. Powell*, 6 *Wheat.*, 125, it is said, "that no individual, or public officer, can sell and convey a title to the land of another, unless authorized to do so by express law, is one of those self evident propositions to which the mind assents without hesitation; and that the person invested with such power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court."

It need only be further observed that the act of June 6, 1871, having prescribed in direct, positive, terms, the course which the treasurer must pursue, in the collection of delinquent taxes, it excludes all other modes of procedure. *Sioux City & Pacific R. R. v. Washington Co.*, 3 *Neb.*, 42. Hence the course pursued by the defendant in offering plaintiffs' land for sale for taxes, when it is admitted that they had sufficient personal property in the county, out of which such tax could have been made, was without authority of law, and would only have cast a cloud on the title of the plaintiffs.

The next inquiry is, will a court of equity interfere and restrain such sale of real estate? It cannot be doubted that a court of equity has power to order to be delivered up and canceled a deed made for the property on such sale; and is not the jurisdiction of the court to enjoin the sale co-extensive with its jurisdiction to set aside the deed and order it to be canceled? In *Pettit v. Shepherd*, 5 *Paige, Ch.*, 501, it is held that the court having this jurisdiction to set aside a sheriffs deed as forming an improper cloud upon title to real estate, it follows as a necessary consequence that the court has jurisdiction to prevent such shade from being cast upon the title, when the defendant evinces a fixed determination to proceed with the sale upon execution.

And it is a principle long and well established that though there may be a remedy at law, yet a court of equity has an undoubted jurisdiction to interfere by injunction, in cases where public officers are proceeding illegally and improperly, under claim of right, or where the exercise of such jurisdiction is necessary to prevent multiplicity of suits. *Mohawk & Hudson R. R. Co. v. Artcher*, 6 *Paige, Ch.*, 88. *Belknap v. Belknap*, 2 *Johns., Ch.*, 472. *Livingston v. Livingston*, 6 *Id.*, 497. *Hamilton v. Cummings*, 1 *Id.*, 516. The same doctrine is held by the courts of England, and in *Hush v. Trustees of Morden College*, 1 *Vesey*, 188, Lord Hardwicke allowed an injunction to restrain commissioners from entering upon the lands of another to dig gravel, as it was not within their authority, although by such act they were as much trespassers as private persons and might be responsible at law, because the remedy at law would not be equal to the remedy in a court of chancery. So in *Shaud v. The Aberdeen Canal Co.*, 2 *Dow.*, 519, Lord Elden held that if the commissioners exceeded their powers, they became trespassers, but chancery would restrain them by injunction, and keep them strictly within the limits of their powers.

In *Burnet v. Cincinnati*, 3 *Ohio*, 87, the bill alleged that under proceedings illegal and void, but under a legal color, the defendant was about to sell part of the real estate of complainant, for the payment of a tax, and prayed an injunction. The injunction was allowed and maintained. *Culbertson v. Cincinnati*, 16 *Ohio*, 574. *Jones v. Same*, 18 *Id.*, 323. *Knowlton v. Supervisors*, 9 *Wis.*, 417. *Kinyon v. Duchene*, 21 *Mich.*, 500. *Williams v. Penny*, 25 *Iowa*, 438. *City of Jefferson v. Patterson*, 32 *Ind.*, 140.

Now according to these well settled principles, I think it is clear when the defendant, under the facts admitted in the case at bar, evinced his fixed determi-

nation to sell the lands of the plaintiffs for taxes, such proceedings on his part was sufficient to call into exercise the jurisdiction of the court to prevent by injunction such sale, which could only result in a conveyance, creating a cloud upon the title of the plaintiffs. *Pixley v. Higgins*, 15 *Cal.*, 132.

The judgment of the district court must be reversed, and the cause remanded for further proceedings.

JUDGMENT REVERSED.

MAXWELL, J, concurred.    LAKE, Ch. J., dissented.