Maxwell, J.
This is an application for a temporary order of injunction to restrain the collection of certain taxes in Colfax county, levied for the payment -of the interest due on certain bridge bonds which it is claimed are illegal and void.
The petition states: “That for the purpose of borrowing money thereon for the purpose of building bridges in said county and over divers streams situated therein, said county did, on the 14th day of May, 1870, issue and sell its coupon bonds for the sum of eleven thousand dollars divided into sums of one thousand dollars each, running for the term of fifteen years with interest thereon at the rate of 10 per cent, per annum, payable semiannually on the 5th day of July and January of each year.
That on or about the 1st day of August, 1871, for the purpose of borrowing money thereon to build and erect a wagon bridge over the Platte river at or near the town of Schuyler in said county, the said county issued and sold its coupon bonds to the. amount of $60,000; and that on the 1st day of July, 1874, the precinct of Schuyler, for the purpose of repairing said Platte river wagon bridge, issued and sold through its county commissioners its coupon bonds to the amount of $5,000, with interest at 10 per cent, payable semi-annually, and principal payable *454 fifteen years from date; that the plaintiff is unable to state further in detail the provisions and conditions of said bonds: that they have applied to the county authorities of said county for a copy thereof, but have been unable to obtain the same for the reason, as stated, that no record has been kept by said county. * That all of said bonds are now outstanding; and the complainant alleges that of the taxes levied as aforesaid by said county the tax designated “bridge bonds, 6 mills,” producing a tax against the plaintiff upon its railroad and appurtenances of the amount of one thousand three hundred and twenty dollars and thirty cents, and the tax designated Schuyler precinct bonds amounting to one hundred and forty-six dollars and seventy cents, were levied to raise money to pay interest on the said bridge bonds so called, hereinbefore mentioned. That said bonds so issued, as aforesaid, were not issued in aid of any private person or corporation undertaking the construction of said bridge, but that the same was built by said county, and the said bonds were issued, and the proceeds thereof applied to the erection of said bridge; that the same is not a railroad bridge, or a work of internal improvement, but a mere extension of the public highway across said Platte river, near said Schuyler.
And said plaintiff alleges and charges that said “bridge bond tax,” and “Schuyler precinct bond tax,” so levied and assessed as aforesaid, were levied without any authority of law whatever, and that they have been assessed and levied without any statute of this state or law of Congress authorizing the same, but such levy and assessment are illegal and void, and ought not to be enforced against this plaintiff.”
But two questions are presented by the petition.
First. What is the proper construction of the word aid as it occurs in section 19, chap. 9 of the Rev. Statutes of 18C6; and in section 1 of an act “To enable counties, *455 cities and precincts to borrow money on their bonds or to issue bonds to aid in the construction or completion of works of internal improvement in this State, and to legalize bonds already issued for that purpose,” approved Eeb. 15,1869 (Laws, 1869, page 92)?
Second. Is a bridge of this kind a work of internal improvement?
Sec. 19, chap. 9 of the Revised Statutes of 1866 provides that the county commissioners shall have power to submit to the people at any regular or special election the question whether the county will borrow money to aid in the construction of pirblic buildings; the question whether the county will aid or construct any road or bridge.
Sec. 23 provides that “'where the object is to construct or aid in constructing, any road or bridge, the annual rate shall not exceed one mill on the dollar valuation.”
Chap. 12 of the Rev. Statutes, repealed in 1873, provided in substance that where a county seat was located on the public lands “the tribunal transacting county business shall enter or purchase one quarter section of land for the use of the county, which shall be surveyed into town lots, squares, streets and alleys, and platted and recorded in pursuance of law, and shall select the place for the county buildings thereon, reserving for that purpose so. many of said lots as may be deemed necessary, the remainder to be sold at public sale to the highest bidder, and the proceeds of the sale to constitute- a fund for the erection of public buildings.” It is apparent that the public buildings thus erected were to be owned by the county and that the aid to be given by the county in their construction, by borrowing money, was to be for such sum as might be thought necessary to secure their completion, and we think it is quite clear that no narrower construction should be given to the language employed in the same connection in respect to “aid” authorized to *456 be given in the construction of any road or bridge by a vote of the people of the county.
Section 1, of an act to enable counties, cities and precincts to borrow money on their bonds, or to issue bonds to aid in the construction or completion of works of internal improvement in this state, and to legalize bonds already issued for that purpose, approved February 15th, 1869, provides: “That any county or city in the state of' Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad or other work of internal improvement, to an amount to be determined by the county commissioners of such county, or the city council of such city, not exceeding ten per cent, of the assessed valuation of all taxable property in said county or city; provided, the county commissioners or city council shall first submit the question of issuing bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money.” Laws 1869, 92.
The legislature on the same day on which the above act was passed, also passed an act entitled, “An act to aid in the construction of a bridge across Blue river.”
“Section 1. That one thousand acres of land in Saline county, donated to said state by the United States, for the purpose of internal improvement, be and are hereby appropriated and set apart to said Saline county, for the exclusive purpose of aiding said county in constructing a bridge across Blue river,” etc. Laws 1869, 278.
On the same day a bill was passed .appropriating one thousand acres of land, granted to the state for internal improvement, for the purpose of building a bridge across the Blue river, in the town of Beatrice. Laws 1869, 276.
In 1871, the legislature passed an act entitled “An act to provide aid to counties for constructing highway bridges across the Platte river,” approved, March 1, *457 1871. Section 1 provides “ that fifty sections ' of the lancl granted by the general government to the state of Nebraska for internal improvements in the said, state, are hereby set apart for the purpose of aiding counties in the construction of highway bridges across the Platte river.” Section 4 proyides “ that all'organized counties in the state of Nebraska through which the Platte river runs, or whose north or south boundary is the Platte river, shall be entitled to aid under this act.” Section 3 provides, “ that counties- desirous of receiving aid under this act shall file with the secretary of state a certificate of the probate judge of said county, showing that said county has erected and completed a wagon bridge across said Platte river, stating the point where such bridge is located, the cost of the same, the amount of the bonds issued to build the same, the date of the bonds, the time when the same are payable, the date of interest on said bonds, and the time when the interest is due, and the place where the same is payable, whether said bonds were issued by a county or precinct, and that such bridge is free for all public travel.”
It is evident that the word aid, as-used in this connection by the legislature', has a much broader meaning than that contended for by the plaintiffs counsel, and is not necessarily restricted to works of internal improvement in which the county has no interest. The funds under the control of the county commissioners for the purpose of building bridges and opening roads, are probably sufficient for ordinary cases, but in counties bordering upon or traversed by the Platte river, the amount thus placed at their disposal is clearly insufficient for the purpose of erecting a bridge across the river.
The word aid, as used, evidently means that the county may contribute toward the cost of the improvement, by issuing its bonds, a portion of the fund necessary to make the improvement to be contributed in some other *458 manner, as by grant from the state, donations, by two counties bordering on tlie river uniting in the enterprise, etc., but does not necessarily repel tlie conclusion that the county may construct the desired improvement for the benefit of the public. Public bridges are defined to be such bridges as form part of the highway common — ■ according to their character, as foot, horse or carriage bridge. 2 East., 342. The term highway is a generic term for all kinds of public ways whether they be carriage ways, bridle ways,' foot ways, bridges, turnpike roads, canals, ferries, or navigable rivers. 1 Bouvier Dic., 667.
What are works of internal improvement ? The supreme court of Alabama in defining the phrase, “ internal improvements,” say: “ Where internal improvements under state authority are spoken of, it is universally understood that works within the state, by which the public are supposed to be benefited, are intended; such as the improvement of highways and channels of travel and commerce.” Mayor of Wetumpka v. Newton, 23 Ala., 660.
The characteristics of the Platte river are a matter of history, and are well known, as well as the difficulty experienced in crossing it. A bridge of this kind affords a safe and convenient means of communication across the river, increases the facilities for transportation and travel, and has all the characteristics of a work of internal improvement. We are accustomed to hear works of internal improvement spoken of as involving miles of railway or canal, and requiring the expenditure of millions of dollars, but neither the cost nor extent of such works determine their character. The St. Mary’s ship canal is but one mile in length, yet it establishes a highway around the Falls of St. Mary, and opens Lake Superior to the commerce of the world. Such works must be tested by the benefits to be derived by the public from their construction, rather than by their extent or cost. A public road constructed *459 through an otherwise impassable portion of the country, is a work of internal improvement; railways are said to be improved roads constructed for public use, although owned by private corporations; and taxation to aid their construction is sustained by the courts on the ground alone that they are essentially public in their character. The Platte river forms to a considerable extent a barrier between the northern and southern portions of the state. A bridge of this kind is designed to open an easy and commodious thoroughfare across the river for the use of the public. Under our statute the commissioners are authorized to levy a cash tax not exceeding five mills on the dollar valuation, to be used exclusively in the construction and repair of permanent bridges and culverts, and they also- have under their control one-third of the road tax. The amount derived from these funds is to be expended under their direction for the purposes- specified in the statute, but in case the amount thus placed at their disposal is not sufficient to make improvements deemed to be necessary for the public good, they may submit to the people in the manner prescribed by law, the question of issuing bonds to aid in the construction of the desired improvement. If the vote is in the affirmative, and bonds are issued in all respects in conformity to law, and the improvement for which they are issued is a work of internal improvement, the bonds will be valid, but no authority exists to aid a merely private enterprise.
We have no doubt a bridge of this kind is a work of internal improvement within the meaning of our statutes. The grounds of illegality of the bonds in question as set forth in the petition, are not sufficient to authorize a court of equity to restrain the collection of taxes for the payment of interest due thereon.
A temporary order of injunction is therefore refused.
Judgment accordingly.