THE FREMONT BUILDING ASSOCIATION v. JOHN E. SHER-
WIN, COUNTY TREASURER OF DODGE COUNTY, NEBRASKA.

1. **Precinct Bonds.** Precinct bonds may be issued to aid in
building a public wagon bridge across the Platte river, that being
a work of internal improvement.

2. ————— : TOLL BRIDGE. Where the vote is regular in all other
respects, it is not a valid objection to the bonds issued in pursu-
ance thereof that the proposition contained a provision for col-
lecting tolls from persons crossing the bridge—especially after
the bonds have passed into the hands of innocent purchasers.

3. **Internal Improvements:** PROPOSITIONS VOTING AID TO.
In voting aid to works of internal improvement, it is not neces-
sary that the proposition shall contain a provision for the levy
of a tax to pay the *principal* of the bonds, but simply to pay the
*interest* as it falls due. As to the *principal*, it is made the duty
of the proper officers to levy taxes to pay it, independently of any
vote on that subject; but this cannot be done until after the year
1880.

ORIGINAL application for injunction. The facts appear
in the opinion.

*W. A. Marlow*, for the plaintiff, *inter alia*, read the
provisions of the road law, Sections 15, 16, Gen. Stats.,
954, contending that the law applied to public high-
ways and public bridges, and not to any toll road or
bridge or any private enterprise; that a toll bridge was
not a public highway but strictly a private enterprise,
and no authority existed under the statutes of Ne-
braska to aid any such enterprise by voting precinct
bonds; that if the power to do so was not expressly given,
it was prohibited; that the fact the precinct pretended to
own and operate the bridge when built, would not make
the bonds valid; that the acts of the county commission-
ers in issuing the bonds were *ultra vires* in that sense
which makes them invalid in the hands of any one.
*U. P. R. R. v. Colfax County*, 4 Neb., 450   Sedgwick

Const. and Stat. Law, 533. Dillon Mun. Corp., 455. *Loan Association v. Topeka*, 20 Wall., 655. *Leavenworth County v. Miller*, 7 Kan., 474. *National Bank v. Iola*, 9 Id., 689. *Clark v. Des Moines*, 19 Iowa, 199.

LAKE, CH. J.

This is an original application for a temporary order of injunction to restrain the collection of a tax levied upon the property of the plaintiff by the commissioners of Dodge county, to pay the interest on certain bonds of Fremont precinct, in said county, issued for the purpose of constructing a wagon bridge across the Platte river. This proceeding is taken upon the theory that the bonds in question were issued without authority of law and are absolutely void even in the hands of *bona fide* holders, by whom it is alleged that some of them are now owned.

The first objection urged against these bonds is that they were issued to aid in the construction of a *toll* bridge, which it is insisted there is no authority for a county or precinct to do. But even conceding that these governmental agencies have no legal right to engage in the business of toll gatherers—which can hardly be questioned—this furnishes no valid excuse for the repudiation of these bonds, especially when they have been negotiated, and have passed into the hands of innocent parties. They bear no infirmity on their face, but, on the contrary, purport to have been issued for a lawful purpose, and in strict conformity to the statute authorizing this sort of precinct indebtedness.

In the case of *The Union Pacific Railroad Company v. The Commissioners of Colfax County*, 4 Neb., 459, this court held the building or repair of a public bridge across the Platte river to be a work of "internal improvement," which a county might aid by the issue of its bonds, as provided in the act of February 15th, 1869,

6

and to this construction of the act in question we still adhere.

By section seven of this act there is given to precincts the same privilege of voting aid to works of " internal improvement" as is conferred upon the counties of the state. When bonds are voted by a precinct the county commissioners are required to issue them as in other cases, but they must contain a statement showing their " special nature." In every formal requisite these bonds are faultless, but it is sought to invalidate them by going back to the proposition under which they were voted and pointing out certain defects therein. The chief of these defects is that it was proposed to make said bridge self-sustaining by the collection of tolls from persons crossing it.

In *State of Missouri, ex rel. Neal v. Saline County*, 48 Mo., 390, it was held that a material omission in the submission of the question of voting county aid to a railroad company was not sufficient to render its bonds void in the hands of *bona fide* holders. In that case it appeared that the vote did not specify *the amount* to be issued, which the statute authorizing the aid imperatively required, and the county records showed the defect in this particular, yet the court held it to be "an error or irregularity of which the county authorities should have taken notice, but which—the election having been passed upon and approved by them—should not affect strangers." As to the fact which was urged upon the attention of the court, as it is in the case before us, that the records showed the irregularity, the court said: "This is true; and doubtless the equity of the relator would be stronger had it been otherwise. But, practically, it makes but little difference. Purchasers would ordinarily only inquire whether the law authorized the vote, and whether the vote had been

taken. It is very seldom that they inspect the record, or if they should do so, that they would be able to detect the error. When these bonds were negotiated, it seems not to have been discovered by any one, even by those in charge of the records, and who participated in the proceedings; and it would be altogether wrong to punish the relator for not having found it out."

We think these remarks of the learned judge pronouncing the decision in that case apply with much force in the case we are considering. These bonds recite the fact that they were "issued in pursuance of and in accordance with a vote of the electors of said Fremont precinct, at a special election held on the eleventh day of November, 1870, at which time the following proposition was submitted:

"Shall the county commissioners of Dodge county, Nebraska, issue their special bonds on Fremont precinct, in said county, to the amount not to exceed fifty thousand dollars, to be expended and appropriated by the county commissioners, or as much thereof as is necessary, in building a wagon bridge across the Platte river in said precinct, * * * which proposition was duly elected, adopted and accepted by a majority of the electors in said precinct voting in favor of the proposition." * * * Then follows a statement that the bonds were issued in pursuance of said vote, and under the provisions of the act of February 15th, 1869, above referred to.

Here, then, we have a plain recital of facts which actually occurred, and which, under the statute, gave to the commissioners ample authority to issue the bonds. There is not the least intimation that it was in contemplation to make this improvement a toll bridge, and the reasonable inference to be drawn from the facts disclosed by the bonds themselves is that it would be free to all.

But, whatever effect the proposition in the submission —to make this a toll bridge—would have had if urged at the proper time as a reason for restraining the negotiation of these bonds, it most certainly furnishes no just ground for resisting their collection after they have been put upon the market, and transferred in due course of business to innocent parties. There is no principle either of equity or morality that would be subserved if this were held to be sufficient to defeat the obligation assumed by the precinct in good faith, and by which large sums of money have been procured and expended for the benefit of the people residing therein.

The building of this bridge was essentially a public enterprise, undertaken for the benefit of the people at large, and it cannot be deprived of that character by the mere fact of the commissioners having, at the instance of the precinct, exacted an illegal charge for its use. If, as is contended, a precinct has no authority to operate a toll bridge, then the payment of tolls by those desiring to use it, may be sucessfully resisted; but the fact of their imposition, however illegal, cannot be held to invalidate a tax levied in pursuance of the statute to meet the obligation assumed by the precinct in making the improvement.

Another point urged in the brief of counsel against the validity of this vote, is that there was no provision for the levy of a tax to meet these bonds as they should fall due. This objection is not supported by the facts. The record shows that the proposition to levy a tax as it should be found necessary, not exceeding one mill on the dollar valuation on all the taxable property in Fremont precinct, to keep up the necessary repairs on the bridge, to meet the contingent expenses, and also to pay the interest and principal of said bonds as they fell due, was adopted. There was, therefore, a full compliance

with the requirements of section nineteen, chapter thirteen, General Statutes, upon which this objection is based. It is true that the amount of the levy is limited to one mill on the dollar, but the presumption is that this rate was considered amply sufficient by the commissioners, and for aught that now appears, it is so.

But we are of the opinion that this section of the statute has no application to this sort of vote; it relates solely to the question of borrowing money, or of extraordinary outlays by a county other than for the purposes of internal improvement.

By section two, chapter thirty-five, General Statutes, which was passed March 3d, 1870, and subsequently to the statute cited by the counsel, it is provided that "the proposition of the question" (of aiding a work of internal improvement) "must be accompanied by a proposition to levy a tax annually for the payment of the interest on said bonds as it becomes due. *Provided*, that an additional amount shall be levied and collected to pay the principal of said bonds, when it shall become due; and, *provided further*, that no tax shall be collected to pay any of the principal of said bonds until after the year 1880."

It will be observed, that by this statute the proposition voted upon need be "accompanied" only "by a provision to levy a tax annually for the payment of the *interest* on said bonds as it becomes due," while as to the *principal*, it is made the duty of the proper officers, at the proper time, to levy a tax sufficient to meet it as it becomes due, regardless of any vote that may have been taken or omitted on that subject.

Failing to discover any valid objection to the tax in question, the prayer of the plaintiff must be denied, and the case dismissed.

JUDGMENT ACCORDINGLY.