South Platte Land Co. v. Buffalo County.

THE SOUTH PLATTE LAND COMPANY, APPELLANT, v. THE BOARD OF COUNTY COMMISSIONERS OF BUFFALO COUNTY, AND OTHERS, APPELLEES.

1. **Equity Jurisdiction:** COLLECTION OF TAXES: INJUNCTION. Courts of equity will enjoin the collection of an erroneous or illegal tax, when the enforcement of the assessment would lead to a multiplicity of suits, or produce irreparable injury, or cast a cloud on title to real estate, or when the assessment on the face of the proceedings is valid, and requires extrinsic evidence to show it is invalid, or when the officers transcend their authority.

2. **Taxes:** EQUALIZATION: POWERS OF COUNTY BOARD. The county commissioners, acting as a board of equalization, cannot raise the assessment on property without giving notice to the owner; and if they do so increase the assessment of property without notice, they act without jurisdiction of the person or subject matter, and their proceedings are void, and of no effect.

3. **Precinct Bonds for Erection of Bridges.** Under the act of February 15, 1869, enabling counties, cities, and precincts to issue bonds in aid of internal improvements, precincts may issue such bonds to aid in the construction of bridges for public use, and when such bonds are issued in conformity with the provisions of the law, they are valid, and the collection of taxes, levied on the property of the precinct to pay the interest thereon, may be legally enforced.

THIS was an appeal from a decree of the district court of Buffalo county, by GASLIN, J. dismissing plaintiff's petition.

*T. M. Marquett* and *O. P. Mason,* for plaintiff, cited *Sioux City & Pacific R. R. v. Washington County,* 3 Neb., 43. *Postlewaite v. Cleghorn,* 43 Ill., 428. A tax founded on an assessment which, from corrupt or malicious motives, is made excessive may be enjoined in equity. Cooley on Taxation, 547. *Albany & C. R. R. Co. v. Canaan,* 16 Barb., 244. *Leffert v. Board of Supervisors of Calumet County,* 21 Wis., 688. *Milwaukee*

*Iron Co. v. Hubbard*, 29 Wis., 57.  *Merrill v. Humphry*, 24 Mich., 170.  *Republic Life Insurance Co. v. Pollak*, Supt. Ct., Illinois, 7 Chicago Legal News, 357. So may any other tax be enjoined in equity which is rendered unequal and unfair by fraudulent practices of the officers, or in which the party is deprived by like practices of important and substantial rights which the law intends to secure to him, such for instance, as the right of appeal from an assessment or writ of error or to be heard by the board of review or equalization, before his assessment should be raised.  *Darling v. Gunn*, 50 Ills., 424.  Cooley on Taxation, 547.  *Rood v. Mitchell County*, 39 Iowa, 444.

The facts averred in relation to said Kearney special tax, not being denied by the answers of the defendant, are admitted, and hence no proof was offered by either party.  That this tax is levied to build a bridge in said precinct of Kearney is admitted.  This tax, the Kearney special of 9 mills on the dollar, is unknown to the law and unauthorized by it.  The bridge itself is a county bridge, and under the exclusive management and control of the county.  It is an improvement of the county and for the county, and the expense of the structure cannot be transferred to the precinct and the burden imposed upon the property situate in a single precinct.  Here all of the property of the county is exempt from the burden of tax for the erection of this bridge except the property of Kearney precinct, and the bridge itself is a county improvement, a county structure.  This cannot be done. *Weeks v. Milwaukee*, 10 Wis., 242–263.  *Exchange Bank v. Hines*, 3 Ohio State, 1.  *Adams v. Beman*, 10 Kans., 37.  *Henry v. Chester*, 15 Vt., 460.

*Sam L. Savidge*, for defendant.

Equity will not interfere by injunction to restrain the

South Platte Land Co. v. Buffalo County.

enforcement of a tax proceeding on the ground of irregularities, or errors in the assessment of the tax, or in the execution of the power conferred upon the taxing officers; the remedy at law being deemed sufficient in such cases. High on Injunctions, Sec. 355. *Macklott v. Davenport*, 17 Iowa, 379. *Warden v. Supervisors*, 14 Wis., 618. *Center v. Black*, 32 Ind., 468. *Kellogg v. Oshkosh*, 14 Wis., 623. *Exchange Bank v. Hines*, 3 O. St., 1. *Jackson v. Detroit*, 10 Mich., 248. *Williams v. Mayor*, 2 Mich., 560. *Chicago v. Frary*, 22 Ill., 34. *Hallenbeck v. Hahn*, 2 Neb., 427. Cooley on Taxation, 528, 529, and 540. *Hershey v. Fry*, 1 Iowa, 596. *Games v. Robb*, 8 Iowa, 199. *Kansas Pacific R. R. v. Russell*, 8 Kansas, 561. *West v. Balford*, 32 Wis., 168. *Arnold v. Middleton*, 39 Conn., 401.

The statutes give notice that the board of equalization will meet at a time and place certain, and no special notice is necessary to a tax-payer, in order to give the board power to raise or lower the assessments upon his property. Gen. Stat., 907, Sec. 27. *Hambleton v. Dempsy & Co.*, 20 Ohio, 173. *Sioux City and Pacific R. R. v. Washington Co.*, 3 Neb., 42. The commissioners as a board of equalization had power to raise or lower the assessed value of plaintiff's property at the time and in the manner they did. American Law Register, 570. The power to correct errors and grievances in respect to the assessment of taxable property is vested exclusively in the board of equalization, and the nature and character of the functions of this board show clearly that it acts judicially and its action is final. Cooley on Taxation, 291. *Bellinger v. Gray*, 51 N. Y., 616. Gen. Stat., 907, Sec. 27.

GANTT, CH. J.

This is a suit by injunction, and in the petition it is

substantially alleged, that the county commissioners, acting as a board of equalization for the correction of errors in the listing and valuation of property, without notice and without authority, did largely increase the assessed value of considerable portions of plaintiff's lands, situated in the county; that unless restrained the defendants will sell said lands, and that by these proceedings a cloud is cast upon plaintiff's title to said lands. In the court below, the defendants made their defense by answer solely upon the merits of the case, and did not question, but submitted themselves to the jurisdiction of the court.

In the case of *The Bank of Utica v. The City of Utica*, 4 Paige, 399, the subject matter of the action was an illegal tax, and though the complainant had a complete remedy at law, still, as the parties submitted themselves to the equity jurisdiction, the chancellor passed upon the case and enjoined the collection of the tax; *Utica Manufr. Co. v. Supervisors*, 1 Barb., Ch. 451. When parties thus submit to the jurisdiction of a court of equity, it may perhaps be proper to pass upon the case. The general rule, however, is that a court of equity will not entertain an action by a party aggrieved for relief against an erroneous or illegal tax, unless the special circumstances of the case bring it within some acknowledged head of equity jurisdiction; namely, when the enforcement of the assessment would lead to a multiplicity of suits, or would produce irreparable injury, or cast a cloud on the title to real estate, or when the assessment on the face of the proceedings is valid, and requires extrinsic evidence to show it is invalid, or when the officers transcend their authority. Cooley on Taxation, 542, 543, 547, and authorities cited. *Johnson v. Hahn*, 4 Neb., 149.

In the case at bar, it appears from the record that the commissioners, without notice, did make new and largely

South Platte Land Co. v. Buffalo County.

increased assessments of plaintiff's lands, and their action in this respect appears valid on the face of their proceedings; but if they acted in the matter without authority their proceedings are invalid, and cast a cloud on the plaintiff's title. Cooley on Taxation, 542. *Dean v. Madison*, 9 Wis., 408.

Therefore the main question presented for consideration is, whether the commissioners, acting as a board of equalization, can re-assess property without giving notice to the owner. Section twenty-six of the general revenue law requires the assessors of each county to meet at the office of the county clerk, on the first Monday of April in each year, " for the purpose of equalizing the assessments, and shall return their lists to the county clerk on or before the second Monday of the same month." After this equalization is made by the assessors, the tax-payers have opportunity until the third Monday of the month to examine the assessments of their property, and any person who may feel aggrieved by anything in the proceedings of the assessors may then apply to the county board, pursuant to the provisions of section twenty-seven, for the correction of any supposed errors in the assessment of his property. Such complaint is in the nature of an appeal from the decisions of the assessors to the county board, and the time fixed by the statute is notice when such complaints must be heard. But it is insisted that as section twenty-seven constitutes the county commissioners also a board of equalization, and provides that the " said board shall have the right to raise or lower the valuations of any or all property (except property valued by the state board) as may be deemed just and proper," absolute power resides in this board to re-assess property as it may choose; and that as the statute fixes the time when the board shall meet, it may exercise this power without giving notice to the owner of the property. If this position were tenable, then it might be-

come necessary for all the tax-payers of the county to continually attend the office of the board throughout the entire year, in order to protect their rights of property, for the section gives the board "power to adjourn their sessions from time to time," without any limitation, and, therefore, no person can know at what time the board may invade his rights of property by an unjust assessment without his knowlege. Certainly such absolute power to tax the property of the citizen without notice would establish a precedent too dangerous to be tolerated, and it is not to be supposed that it was the intention of the legislature to confer on the board a power so dangerous and so liable to abuse.

Tax is property, and the constitution declares that no man shall be deprived of his property without due process of law; and it is said the term means "a course of legal proceedings, according to those rules and principles which have been established in our systems of jurisprudence for the protection and enforcement of private rights," and, except in proceedings *in rem*, the party whose rights are to be affected in any proceeding, must be brought within the jurisdiction of the tribunal competent to pass upon the subject matter, by service of process or his voluntary appearance. But if the proposition contended for is maintainable, then the board, by its arbitrary act, may, without due process of law, raise the tax on property of the citizen, without limit and without his knowledge.

In *Sioux C. & P. R. R. v. Washington Co.*, 3 Neb., 43, it is said that: "However full and complete might be the jurisdiction of the board over the subject matter, yet the party interested has, according to the plainest principles of justice, a clear right to a hearing and a day in court, and any other view stands opposed to reason, justice, and sound policy, and to all those general principles which, in all cases, allow a party to be heard before

his rights of property can be affected by any tribunal. This is the universal law of the land; * * * hence, it is clear that the board can have no jurisdiction without notice to the person whose rights and interests are to be affected by its decision."

In California the statute requires the board to meet on the first Monday in August, and provides that it may hold sessions from time to time until the second Monday in September. It also gives the board power to add to or deduct from any valuation, whether the said sum was fixed by the owner or the assessor. And in *Patten v. Green*, 13 Cal., 329, the court, in construing the statute says: "We think it would be a dangerous precedent to hold that an absolute power resides in the supervisors to tax land as they may choose, without giving notice to the owner. It is a power liable to a great abuse. The general principles of law applicable to such tribunals oppose the exercise of any such power. The publication of notice of the sittings of the board amounts to no protection to the owner, for the sessions of the board are, or may be, from the first Monday in August until the second Monday in September, and it could scarcely be expected that every tax-payer is to wait upon the board all this time to see if his taxes are to be increased. The words of the statute seem to require a complaint, or some proceeding analogous to this; at least that there is something to be done, however informal, in the nature of a controversy, or contestation, or in the nature of a judicial enquiry. There can be no considerable difficulty in giving this notice, and we think the best interests of the state require it."

It seems to me that if the proposition contended for on the part of the defendants is to be maintained it must be at the sacrifice of those great principles upon which private rights repose for their security, and which are secured by the solemn guaranties of the constitution, and

therefore I must conclude that the county commissioners, acting as a board of equalization, cannot interfere with those rights and re-assess property without first giving notice to the owner.

It is further complained that the plaintiff is charged with a special tax to pay interest on Kearney precinct bonds, issued to aid in building a bridge in said precinct, and it is alleged that this tax was levied without authority of law, and is void.

In respect of this cause of action it is only necessary to observe that in the case of *The Union Pacific R. R. Co. v. Commissioners of Colfax County*, 4 Neb., 450, it is held that " a bridge of this kind is a work of internal improvement within the meaning of our statutes," and that under section 19, chapter 9, of the Revised Statutes of 1866, and the act of February 15, 1869 (Gen. Stat., 448), entitled " an act to enable counties, cities, and precincts to borrow money on their bonds, or to issue bonds to aid in the construction or completion of works of internal improvements in this state," counties and precincts may, in conformity with the provisions of these statutes, issue bonds to aid in the construction of a public bridge, and that when so issued " the bonds will be valid." And the statute specially provides that when such bonds are issued by a precinct, "the tax to pay the same shall be levied upon the property within the bounds of such precinct." *Fremont Building Association v. Sherwin*, 6 Neb., 50. Therefore, according to the statute and the law as settled by this court, the tax to pay the interest on these bonds was legally and properly levied on the property within the bounds of the precinct.

Decree: This cause came on for hearing on appeal from the district court of Kearney county, and was argued by counsel, and now, on mature consideration thereof, this court finds that the proceedings of the county commissioners, at their session in April,

1874, acting as a board of equalization for said county, in raising the assessments on the lands of the plaintiff, to-wit: the north-east quarter and the south-east quarter of section two, in township eight north, of range sixteen west, the north half of the north-west quarter, and the north half of the north-east quarter, and lots one, two, three, and four, in section eleven, in township eight north, of range sixteen west, acted in the matter without notice to the plaintiff, and consequently without jurisdiction of the plaintiff or the subject matter. It is therefore ordered and decreed that the defendants, and each of them, be perpetually enjoined from collecting, or in any way enforcing the collection, of any and all taxes levied on said increased amount of assessments upon said lands of the plaintiff, and that said additional or increased assessments so made by said board be deemed, and are hereby declared to be, void, and of no effect. And it is further ordered and decreed that the petition of the plaintiff, so far as it relates to the tax levied to pay the the interest on the bridge bonds issued by Kearney precinct, be and the same is hereby dismissed.