THE STATE OF NEBRASKA, EX REL. CITY OF COLUMBUS, v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

1.  Bonds of City in aid of County Bridge. The provisions of section 77, chapter 14 of the Compiled Statutes, authorizing a city in certain cases to appropriate the sum of five dollars per lineal foot to aid in the construction of a county bridge, do not prevent a city situated on a stream like the Loup river, from issuing bonds to aid in the construction of a public bridge across such river.

2  ———. Such bonds may be used to construct a bridge on a public thoroughfare leading into such city, although the bridge is outside of the corporate limits.

ORIGINAL application for mandamus.

*Sullivan & Reeder,* for relator, cited: *U. P. R. R. Co. v. Colfax County,* 4 Neb., 450. *Mayor v. Newton,* 23 Ala., 660. *Brown v. Merrick County,* 18 Neb., 355.

*William Leese, Attorney General,* for respondent.

MAXWELL, J.

This is an application for mandamus to compel the defendant to register certain. bonds issued by the city of Columbus. The cause is submitted to the court on demurrer to the petition. The petition is as follows, omitting the formal parts:

"The relator, the city of Columbus, in the county of Platte and state of Nebraska, now is, and for many years last past has been, a city of the second class, duly organized and incorporated under and by virtue of the laws of Nebraska.

"The defendant, H. A. Babcock, is the duly constituted and acting auditor of public accounts of this state.

"The Loup river. is a large, swift stream running through the southern portion of said county, and varying in width therein from 800 feet to 1,000 feet. Some of the townships of said county lie north and some south of said river. During the period of ten years last past there has been a public wagon bridge across said river, built by said county and maintained partly by it and partly by subscriptions of the citizens of Columbus aforesaid. Said bridge is on one of the public roads of said county, is about 1,000 feet in length, and crosses said river at a point within a quarter of a mile of said city's corporate limits. Said bridge is the only wagon bridge across said river in said county. Almost every year during the seven years last past some portion of said bridge has been swept away by the spring freshets and ice-floes, and communication between the portions of said county divided by said river has been thereby almost entirely suspended for long periods of time. Said county is unable to raise, appropriate, or expend sufficient funds for the purpose of making said bridge safe and permanent.

"The present bridge across said river. is a temporary

and founderous structure, out of repair and dangerous to use. The reasonable cost of a substantial and permanent wagon bridge across said river would be about the sum of $38,000.

"For the purpose of aiding Platte county aforesaid in the construction of a public wagon bridge, in the place and instead of the old bridge across said river in said county, the proper authorities of said city called and gave due notice of an election to be held therein on 17th day of October, A.D. 1887, for the purpose of submitting to the qualified electors thereof a proposition to issue, for the purpose aforesaid, thirty six per cent coupon bonds of said city, each for the sum of $1,000, due thirty years from December 1, 1887, and to levy a tax annually for the payment of the interest thereon as it became due.

"That on the said 17th day of October, said election was held pursuant to said call and notice, and the said proposition was duly elected and adopted, there being 348 votes cast in its favor and 6 votes against it.

"After said election was held and the result thereof ascertained and declared as required by law, the thirty bonds above mentioned were prepared in due form, with proper and necessary recitals therein, were signed and executed by the proper authorities of said city, and by them, on the 10th day of December, 1887, presented to the defendant as such auditor for registration and certification as required by law in such cases. Said bonds when presented to the defendant were accompanied by a duly authenticated record of all the proceedings relative to the issuance of said bonds, which record shows that all the proceedings relative to the issuance of said bonds necessary to be taken were regularly and legally had and done.

"The assessed valuation of all taxable property in said city for the year A.D. 1887 is $420,000. Except the bonds above mentioned said city has never issued any bonds to aid in the construction of any railroad or other work of internal improvement.

"A small part of the said Loup river is within the corporate limits of said city, but the said bridge, to aid in the construction of which said bonds were voted, is wholly outside of said corporate limits and not nearer than a quarter of a mile thereto.

"The defendant, at the time said bonds were presented to him as aforesaid, was requested by said city to register them and each of them in his said office, and to certify on each of said bonds that it had been regularly and legally issued and registered as required by law. But the defendant refused and still refuses to comply with said request, and assigns as his reason for such refusal that said city has no authority to vote or issue bonds to aid in the construction of said bridge or any work of internal improvement not within its corporate limits.

"The said road on which said bridge is located runs to and into said city, and would be of no value or utility whatever without said bridge; that nearly all the trade and business of the people living in the townships in said county south of said river, and much of the trade and business of the people of Butler and Polk counties in said state, come to and reach said city over said road and bridge, and could reach it in no other way except by railroad; that there is no bridge across said river below the one herein described, and none above it within a distance of twenty miles; that the construction and maintenance of a permanent wagon bridge across said river on said road will greatly enhance the value of property in said city, increase its business, and conduce to its prosperity, but such bridge cannot be built without the registration and certification of said bonds by the defendant,"etc.

Section 1, Chap. 45 of the Compiled Statutes, provides: "That any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad, or other work of internal improvement, to an amount to be determined by the county commis-

sioners of such county, or the city council of such city, not exceeding ten per centum of the assessed valuation of all taxable property in said county or city; *Provided,* The county commissioners, or city council, shall first submit the question of the issuing of such bonds to a vote of the legal voters of said county or city, in the manner provided by chapter nine of the Revised Statutes of the state of Nebraska, for submitting to the people of a county the question of borrowing money."

Sec. 2. "The proposition of the question must be accompanied by a provision to levy a tax annually for the payment of interest on said bonds as it becomes due; *Provided,* That an additional amount shall be levied and collected to pay the principal of said bonds, when it shall become due; and, *Provided, further,* That no tax shall be levied or collected to pay any of the principal of said bonds until after the year 1880."

SEC. 3. "The proposition shall state the rate of interest each bond shall draw, and when the principal and interest shall be made payable."

SEC. 4. "If two-thirds of the votes cast at any such election for the purpose herein set forth be in favor of the propositions submitted, the county commissioners, in the case of a county, and the city council, in the case of a city, shall cause the proposition and the result of the vote to be entered upon the records of said county or city, and a notice of its adoption to be published for two successive weeks in any newspaper in said county or city, if there be one, and shall thereupon issue said bonds, which shall be and continue a subsisting debt against such county or city until they are paid and discharged," etc.

The defendant is in doubt upon two points, which will be noticed in their order, and virtually asks the direction of the court as to his duty in the premises.

*First.* Sec. 77, Chap. 14, Compiled Statutes, provides: "That when any city or village has constructed a bridge

over sixty foot span on any county or state highway within their corporate limits, and have incurred a debt for the same, then the treasurer of the county in which said bridge is located shall pay to the treasurer of said city or village seventy-five per cent of all bridge taxes collected in said city or village until said debt is fully paid and interest upon the same.   *   *   *   *   That the council or trustees may appropriate, in the manner hereinafter provided, a sum not exceeding five dollars per lineal foot to aid in the construction of any county bridge within the limits of such city, or may appropriate a like sum to aid in the construction of any bridge contiguous to said city or village on a highway leading to the same, or any bridge across any unnavigable river which divides the county in which such city or village is located from another state."

These being special provisions relating to the powers of a city council, it is claimed control the general provisions of the statute, and by implication repeal the act relating to the issuing of bonds for works of internal improvement. An examination of the statute, however, shows that the appropriations spoken of are to be made from funds available to the city, and do not relate to the issuing of bonds. While it is true that bridges across the water-courses of the state are to be built and repaired by the several counties through which they flow, yet in many of the counties bordering on the Platte river or its branches it is impossible for a county to construct a bridge across that river or a large branch thereof, like the Loup in Platte county, from its ordinary revenue derived from its levies for roads and bridges. Therefore, if no other means can be provided than that derived from such levies, it would be impossible to construct and in many cases to repair bridges across the streams named. Such bridges may be of the utmost importance to the public at large, and to particular localities, but unless there is authority to raise means to construct the same, no adequate facilities for crossing such

streams can be furnished. The benefit to be derived by the public from such bridges may be as great as that to be derived from railway communication, yet no one will deny the power of the city to issue bonds to aid in the construction of a railway.

In *U. P. R. R. v. Colfax County*, 4 Neb., 450, this court held that a bridge across the Platte river was a work of internal improvement, and that decision has been adhered to. A bridge across the Loup river, therefore, at the point indicated comes clearly within the rule stated in *U. P. R. R. v. Colfax County*, and is a work of internal improvement. The city, by issuing the bonds in question, simply proposed to aid the county in the construction of a public way across said river by furnishing a portion of the funds necessary for the construction of the same. This, in our view, the city had authority to do.

*Second.* It is objected that the bridge is outside of the corporate limits of the city of Columbus, and it is claimed that the authority of the city to aid in the construction of works of internal improvements extends only to works constructed within the corporate limits. There is no restriction in the act authorizing a city to issue its bonds for works of internal improvement, the language being, "that any county or city in the state of Nebraska is hereby authorized to issue bonds to aid in the construction of any railroad or other work of internal improvement."

Evidently the legislature did not intend to restrict the aid to be given by a city to improvements actually constructed within its limits. Had such been the intention, it would have been so stated; the language being general and without limitation as to what the aid should be applied, it necessarily, to a great extent, is left to the discretion of two-thirds of the legal voters of the city at the election called for the purpose of voting aid. Such voters may reasonably be expected to consult their own interest and that of the city in which they reside, and vote aid to such

works of internal improvement as they may deem advantageous.    Thus in *Brown v. Merrick County*, 18 Neb:, 355, the county commissioners of Merrick county undertook to reconstruct a bridge across the Platte river at Clarksville in that county.    The aggregate width of the several channels at that point is about one mile, seven hundred feet of the south channel being in Polk county.    Clarksville precinct voted three thousand dollars in precinct bonds to aid in the construction of the bridge.    The county commissioners of Polk county refused to co-operate in building the bridge; the county commissioners of Merrick county therefore used the bonds of Clarksville precinct so far as the money derived therefrom was necessary to construct that portion of the bridge in Polk county, and this court sustained their action.    Without this power the bridge would have been of no value whatever, as seven hundred feet of the south channel of the Platte river in Polk county would have been without a bridge and thus communication cut off.    But by the use of the proceeds of the bonds the bridge was completed and the general public, as well as the people of Clarksville, greatly benefited thereby.

In *State v. Keith County*, 16 Neb., 508, certain county bonds to construct a bridge across the South Platte river were issued by that county, and a bridge constructed, from which the public at large, and the town of Ogallala especially, derived great benefit; and no doubt the general public and the city of Columbus will derive equally as great benefits from the construction of the proposed bridge across the Loup at the point indicated.    The authority of the city to issue its bonds for the purpose stated is clearly conferred by the statute, and it is the duty of the defendant to register and certify the same.    A peremptory writ will therefore issue as prayed.

WRIT AWARDED.

THE other judges concur.