E. S. TOWLE, PLAINTIFF IN ERROR, v. T. C. SHELLY, DEFENDANT IN ERROR.

Taxes: SALE: FORECLOSURE OF LIEN. K. and G. were the owners of a certain city lot with a brick building thereon, except that two front feet of said lot extending the whole length thereof were owned in severalty by S. No taxes were paid on said lot; it went to sale for delinquent taxes. Not being sold for want of other bidders, it was bid in by the county commissioners, who assigned the certificate of sale to S. K. and G. became bankrupt; at a public sale of their estate said lot was bought by T. In a proceeding in equity in the nature of a proceeding in rem. by S. to foreclose the lien for twenty-three twenty-fifths of said taxes upon the south twenty-three feet of said lot, T. answering and defending, Held, That S. was entitled to a judgment of foreclosure, and to ten per cent on the amount found, as an attorney's fees.

ERROR to the district court for Richardson county. Tried below before GASLIN, J., sitting in that county.

*Isham Reavis,* for plaintiff in error.

*Amos E. Gantt,* for defendant in error.

COBB, J.

This action was brought in the district court of Richardson county for the purpose of foreclosing a tax lien on a certain lot in Falls City.

It is alleged in the petition that this lot was sold by the county treasurer of said county on the 7th day of November, 1877, for the taxes of the year 1876 and previous years, to Richardson county; that the said county afterwards sold and assigned to one B. M. Fox the certificate issued to said county evidencing such sale and purchase; that before the time allowed by law for the redemption of said lot from the said tax sale, the legal notice was given, and upon the expiration of such time of redemption, a tax deed of said lot was duly executed upon said certificate by the county treasurer of said county to the said B. M. Fox, and delivered to him, but that said deed failed to convey title to said lot for the reason that "there was levied by the county commissioners of said Richardson county against said property, as taxes for the year 1876, and which formed a part of the taxes paid on said tax sale for which said pretended deed was issued, a county insane tax, amounting to seventy-five cents in the aggregate, which said county insane tax was wholly unauthorized by law;" that the said lot was thereafter, on three several occasions, sold for delinquent taxes due thereon, by the county treasurer to the said B. M. Fox, for the several sums of money in said petition set out and specified, and certificates of sale therefor duly executed and delivered by the county treasurer of said county to the said B. M. Fox; that afterwards the whole of the said certificates, including the one upon which the tax deed was issued, were by the said B. M. Fox sold,

and for a valuable consideration duly assigned to the plaintiff. Also, that for the taxes of the year 1880 the said lot was by said county treasurer duly sold to Florence L. Vaughan, and a certificate therefor duly executed and delivered to her; which said certificate was, for a valuable consideration, afterwards by the said Florence L. Vaughan duly sold, assigned, and delivered to the plaintiff.

It was claimed in and by said petition that the proportion of the several sums paid for said lot at said several tax sales, which was properly applicable to and due upon the south twenty-three feet of said lot, the same being twenty-three-twenty-fifth parts of said several sums, together with interest thereon, remains unpaid and due to him, with a prayer that an account might be taken thereof, that the title of the said tax deed might be adjudged to have failed, and the amount found due upon such accounting, together with costs and attorney's fees under the statute, be decreed to be a lien upon said south twenty-three feet of said lot, etc.

There was an answer by the defendant E. S. Towle, in which he alleges that he " was the sole owner of the south twenty-three feet of said lot, and has been such sole owner since the 8th day of April, 1882; that he purchased said property, together with the two-story brick building situate thereon, at a public sale had by the assignee in bankruptcy of the bankrupt estate of Keim & Grable, the former owners thereof; that previous to the purchase aforesaid said lot 7, in block 71, in the city aforesaid, was partly owned by the plaintiff and the said Keim & Grable, and, with the exception of the year 1879, was assessed entirely to said Kiem & Grable for the purpose of taxation; that for the year 1879 the south twenty feet of said lot, which was owned entirely by the bankrupt estate of Keim & Grable, was assessed for taxes to the real owners, and was afterwards sold for taxes to the amount of $36.34, as charged in plaintiff's petition, and which this defendant

admits is a charge on said land, less illegal taxes, and which defendant is ready and willing to pay, with reasonable interest, as the court may direct."

The said defendant in and by his said answer alleged that as to all the other sales and purchases of said lot for taxes as set forth in said plaintiff's petition "they are illegal and void and constitute no claims or liens upon said property, for the reason that said plaintiff was in every instance, except as above related, charged with the duty of paying a part of the taxes assessed on said lot," etc.

The plaintiff demurred to the said answer of defendant Towle by general demurrer, which said demurrer was sustained by the court, and the said defendant electing to stand upon his said answer, and failing to present other plea or answer to the said petition, the court found thereon for the plaintiff; that the said deed was null and void and that the same be set aside; that there is due the plaintiff, after all illegal taxes have been deducted on said tax certificates, the sum of $626.12. The court also found that there was due the plaintiff as attorney's fees the sum of $62.61; that the said sums be and constitute a first lien on the said south twenty-three feet of said lot, etc.

The said defendant brings the cause to this court on error. The only question presented by this record, although the same is presented in several ways, is whether the facts alleged in the answer of the defendant, to-wit, that he, the said defendant, "was the sole owner of the south twenty-three feet of said lot, and has been such sole owner since the 8th day of April, 1882; that he purchased said property together with the two-story brick building situate thereon at a public sale had by the assignee in bankruptcy of the bankrupt estate of Keim & Grable, the former owners thereof; that previous to the purchase aforesaid said lot * * * was partly owned by the plaintiff and the said Keim & Grable, and, with the exception of the year 1879, was assessed entirely to the said Kiem and Grable for the purpose of taxation," amounts to a defense.

There can be no doubt that when the defendant Towles purchased the south twenty-three feet of said lot "together with the two-story brick building thereon" at bankruptcy sale, he bought it subject to the unpaid taxes due thereon, and did not take said property discharged of the lien of said taxes, by reason of the certificate therefor having fallen into the hands of the owner of the north two feet strip of said lot.

In some of the states, in former times, in cases where it was sought by means of tax proceedings to divest the title of the general owner, and acquire the title and possession of valuable acres for cents paid for taxes, and where it was considered not only permissible but commendable to construe every possible technicality against such tax title, it has been held that where an owner of an undivided interest in a piece of real estate bought the interest of his co-tenant therein for delinquent taxes, he would be held to hold such title in trust for such co-tenant. This was the holding of the supreme court of Michigan in the cases of *Page v. Webster*, 8 Mich., 263, and *Butler v. Porter*, 13 Id., 292, and it is true that in the case of *Cooley v. Waterman*, 16 Id., 366, the doctrine of the two former cases was *stretched* to cover a case where two pieces of land owned in severalty by two owners, but wrongfully assessed together, were also sold together for the delinquent taxes of the whole and bid in by the owner of one parcel. I know of no other case where the rule has been carried to a case of ownership in severalty. As an individual member of the court, I do not consider the rule at all applicable to a case where it is not sought to divest title, but only to hold the property for taxes actually paid with simple interest and necessary costs. Nor do I think that it was founded upon substantial reason, even where invoked in defense of a tax title. In this connection I quote the language of C. J. Cole, of the supreme court of Wisconsin, in the case of *Frentz v. Klotsch*, 28 Wis., 312: "Now the doctrine that

one tenant in common will not be allowed to purchase in an outstanding title and avail himself of the benefit of such title as against his co-tenant, is limited and qualified by some of the authorities. The rule cannot be said to be one of universal application, but depends somewhat upon the facts of the particular case. Tenants in common are bound to deal fairly with each other, and when they stand in such confidential relations in regard to one another's interests that it would be inequitable to permit one to acquire a title solely for his own benefit and expel his co-tenant, then he will be treated as a trustee for the share of his co-tenant. But it is suggested by some of the authorities that tenants in common are probably subject to this mutual obligation to preserve the estate for each other, only when their interests accrue under the same instrument, or act of the parties, or of the law, or when they have entered into some engagement or understanding with one another; for it is said, persons acquiring unconnected interests in the same subject by distinct purchases, though it may be under the same title, are probably not bound to any greater protection of one another's interests than would be required between strangers." See 1 Leading Cases in Equity, note to *Keech v. Sanford*, p. 196. *Roberts v. Thorn*, 25 Tex., 728. *Brittin v. Handy*, 20 Ark., 381.

I have never been able to see that the owner of an undivided share of a given lot or tract of land was under any greater obligation or duty to pay the taxes on the share that he did not own, than he was to pay the taxes on the adjoining lot or the one across the street. Cases and law books can be found in which such is assumed to be the law, but I have yet to see a reason given for it. Equally but no more unsatisfactory, to my mind, is the conclusion reached in the case of *Cooley v. Waterman, supra*, which, as I understand it, amounts to this: That the unlawful act of an assessor in joining the distinct tracts of land belonging separately to A and B in one assessment, imposes the duty

on A to pay his own taxes before he can be permitted to bid off the land of B at the tax sale, while all the balance of the non tax-paying world may freely bid.   But this is only one of the extreme positions which the ablest courts have taken when in stress of a reason for refusing to execute the taxing laws, when the effect of such execution would be to sanction the passing of the title to land on tax sales.

Do the facts stated in the answer disclose any duty on the part of the plaintiff to pay the taxes on the part of the lot in question, and if he had have paid them, or did pay them under a duty, would he not still have a lien on the property therefor which a court of equity would enforce?

The lot in question appears to be of twenty-five feet front.   The plaintiff was the owner in severalty of two front feet extending along the north·side for the entire length of the lot.   Whether there was any improvement upon or any one in the actual possession of these two feet of ground does not appear, either from the petition or the answer.   It does appear that the portion of the lot in question, the south twenty-three feet, was occupied by a two-story brick house owned by the defendant and his grantor.   Whether this ·two-story brick building occupied the whole frontage of the lot, including the two front feet, the legal title of which was in the plaintiff, does not appear, and probably cannot be presumed; but upon well-known principles of pleading, and especially as it does appear that for each of the years but one the entire lot was assessed to the assignors of the defendant's grantor, it will be presumed that for the whole of the time involved those whom the defendant succeeds in the title were in the actual possession of at least the south twenty-three feet of the lot, and that the plaintiff was not in the actual physical possession of any part of the lot.   Such being the case, I do not think that the plaintiff was under any duty or obligation to pay the taxes on that part of the lot which

he did not own ; and that when he submits to the cancella-
tion of two-twenty-fifth parts of the amount of said taxes
he is entitled to a decree for the balance with interest.

As to the constitutional question presented in the brief
of counsel for the plaintiff in error, I will only say that
that point has not been considered. It does not seem to
have been presented to the district court, nor in this court,
when the cause was previously here and disposed of by
opinion in 16 Neb., at pp. 194, 196, so it cannot be con-
sidered now.

The award to the plaintiff of $62.61 as attorney's fees,
made by the district court, seems to be in strict accordance
with the provisions of section 181 of the revenue law,
Comp. Stat., ch. 77.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.