THE STATE, EX REL. JAMES T. KINZER ET AL., RELATORS, v. JAMES R. CAIN, TREASURER OF RICHARDSON COUNTY, RESPONDENT.

Taxes: COLLECTION. It is not the duty of a county treasurer, nor has he the power, under the statutes of this state now in force, to seize or sell personal property for real estate taxes.

ORIGINAL application for mandamus.

*E. W. Thomas, A. J. Weaver*, and *Frank Martin*, for relator, cited: *Johnson v. Hahn*, 4 Neb., 143. Blackwell Tax Titles, 172–177. Cooley, 302.

*C. Gillespie*, for respondent, cited: Comp. Stat., Ch. 77, §§ 89, 138, 139.

*Isham Reavis*, on same side, cited: *Kittle v. Sherwin*, 11 Neb., 67. Cooley, 34. 2 Desty, 746. *Ham v. Miller*, 20

Iowa, 450.    *Annapolis v. Harwood*, 32 Md., 471.    *Shaw v. Pickett*, 25 Vt., 482.

COBB, CH. J.

This is an original application for writ of mandamus to compel the respondent, who is the county treasurer of Richardson county, to levy upon the personal property of certain owners of real estate in said county, and sell the same for the purpose of collecting the real estate taxes due from such owners upon said real estate owned by them respectively.

The respondent appeared and demurred to the relation, thus presenting an issue of law, which may be stated as follows:

Is it the duty of the county treasurer to seize and sell the personal property situated in his county of the owner of real property, also situated in his county, for the purpose of collecting the taxes on such real property which are unpaid and delinquent?

I think we may safely say that it will not be held to be his duty to seize and sell as above, capable of being enforced by mandamus, unless it be found that such duty is enjoined upon him by statute. The duty of paying taxes by the owners of property, as well as the duty and power to collect them by the constituted authorities when their payment is neglected or refused, rests solely in this state upon constitutional and statute law, and in no degree upon the principles or authority of the common law of England. In this connection I yield to the inclination to say, that with the most profound respect for the court as constituted at the date of the judgment in the case of *Johnson v. Hahn*, 4 Neb., 139, and especially for the writer of the opinion in that case, and while it is not my purpose to criticise that case as a fair construction of the statutes then in force, yet, in so far as it invoked the authority of the common law and of general principles, I have failed in my efforts to

bring my mind to its approval. No doubt in England, or from an English standpoint, real or landed property is, and has always been, invested with a quality superior to that of personal property. This is traceable to two causes: *First,* Their insular position and limited territory, rendering it impossible for many outside of the hereditary class of noble and wealthy persons to own land, hence the law of primogeniture and entailment, devised for the purpose of preventing the division of estates and of preserving the lands intact in the family; and *Second,* To the principles of the feudal law, which originally made each holder of landed estate a knight and a gentleman, a quality which did not attach to the owners of chattels alone, however wealthy. Neither these facts, the laws founded upon, nor the principles or prejudices which follow them, have ever prevailed in America; certainly not in Nebraska. Here there has never been any quality of superiority ascribed to one species of property over another. It has been and is the policy of our government and people to favor the free, original distribution of landed property among all who would avail themselves of it. With a continent instead of an island at their disposal, the American governments and people have always favored the free and untrammeled transfer of titles of real estate from man to man. And recognizing the accumulation of large bodies of land in the hands of one owner as a great evil, they have always looked to the taxing power, as well as to the equal distribution of the lands of intestate decedents equally among the heirs, as potent guarantees against its becoming a threatening one.

I think, therefore, that if we are to consider anything besides the letter and true intent and meaning of the statute as controlling the decision of the question in hand, and we find it necessary to guard one species of property more than another from the tax gatherer, we will find the object of our solicitude rather in the useful and necessary articles of personal property, than in his real estate.

The act of 1871 was in force at the date of the decision and opinion above referred to. By the first section of said act it was declared to "be the duty of the county treasurer * * * to proceed, as soon after the first day of May as practicable, to make such delinquent tax out of the personal property of such delinquent, if such property can be found; and this provision shall apply as well to the taxes assessed on real estate, and remaining unpaid, as to delinquent taxes assessed on personal property, and the remedy to be pursued shall be the same as provided in sections forty-nine and fifty-two of said act" (meaning the act of February 15, 1869, to which said act was an amendment), etc. General Statutes, 916. The above provision was passed as an amendment to section 50 of the act of February 15, 1869, and remained in force until the taking effect of the general revenue law of 1879; although my recollection is that it was generally understood to have been superseded by other provisions of statute at an earlier date. But be that as it may, there can be no doubt that the act of February 15, 1869, "and all acts and parts of acts supplemental to and amendatory thereof," including the act of June 6, 1871, were repealed by the act of 1879, which went into force September 1st of that year. Comp. Stat., Ch. 77. It was, no doubt, the intention of the legislature in the latter act to make it perfect and complete in itself, without depending in any degree upon the provisions of the former statutes, at least up to the point of seizing and selling chattels for personalty taxes, and of offering lands for sale for the delinquent taxes remaining unpaid thereon. From a careful examination of the provisions of said act, I am unable to find any authority—certainly no duty— devolving upon a county treasurer to seize and sell personal property for taxes due on real estate; and the careful elimination therefrom of all provisions of former statutes which had been held or supposed to impose such duty or confer such authority must, upon well-known principles of con-

struction, be held to indicate the will and intent of the legislature to withhold such authority, and not to impose such duty. While it is made the duty of the county treasurer, under certain and well-defined circumstances, to seize and sell chattels for personalty taxes unpaid and delinquent, quite different, and, as I think, exclusive duties are imposed upon such officer in respect to real estate taxes.

The demurrer to the relation is therefore sustained, and the application dismissed.

JUDGMENT ACCORDINGLY.

THE other judges concur.