J. McGREGOR ADAMS v. RALPH R. OSGOOD.

FILED NOVEMBER 7, 1894.    No. 5750.

1. **Taxation:** VALIDITY OF SALE FOR PORTION OF TAXES.    A
county treasurer cannot make a valid public or private sale of
real estate for non-payment of delinquent taxes due thereon,

Adams v. Osgood.

unless in such sale are included all taxes, with interest and costs, then delinquent against such real estate. *State v. Helmer,* 10 Neb., 25, *Tillotson v. Small,* 13 Neb., 202, and *O'Donohue v. Hendrix,* 13 Neb., 257, reaffirmed.

2. ———: PURCHASERS AT SALE. The rule of *caveat emptor* applies with full force to a purchaser of real estate sold for the non-payment of delinquent taxes. *Pennock v. Douglas County,* 39 Neb., 293, re-affirmed.

3. ———: SALES: DISCHARGE OF TAXES NOT INCLUDED. The sale of real estate by a county treasurer for delinquent taxes due thereon for one year does not discharge either state, county, or city taxes assessed against such real estate for prior years, which taxes were not included in such sale.

4. ———: LIENS: FORECLOSURE. The only way by which a valid tax assessed against real estate in this state can be discharged is by the payment of such tax, unless such real estate be sold therefor and the holder of the tax lien fails to bring suit to foreclose the same for five years after the expiration of the time to redeem.

5. ———: ———: SALES. The tax sales and liens mentioned in sections 119 and 181 of the revenue law of 1879 have reference only to valid tax sales and valid liens arising therefrom.

6. ———: SALES: RETURN: PRIVATE SALES. Until a county treasurer has made a return to the county clerk of his county of the public sale of lands for taxes held by him in pursuance of section 109 of the revenue act of 1879, he has no authority to sell lands at private sale for delinquent taxes due thereon.

7. Invalid Tax Sales: RIGHTS OF PURCHASERS: SUBROGATION. Where a sale made of real estate for taxes is invalid the purchaser thereat, for the taxes for which he purchased the real estate, and for all prior and subsequent taxes existing against said real estate paid by him because of his purchase, becomes subrogated to all the rights of the public to the liens existing against said real estate for such taxes, and entitled to the same rate of interest, and no greater, on the taxes paid, which the delinquent taxes were drawing when he paid them. *Dillon v. Merriam,* 22 Neb., 151, reaffirmed.

8. ———: CANCELLATION OF CERTIFICATE: ATTORNEY'S FEE. Where an owner of real estate brings suit to cancel an alleged invalid tax sale certificate, and the holder of such certificate admits, in his answer to the action, its invalidity, asks to be subrogated

42   450
s55   766
60   254
60   257
s60   780
60   781

42   450
61   877

42   450
62  223n
62   543

to the rights of the public to the lien for the taxes on which said certificate is based, and to foreclose such lien against said real estate, he is not entitled to an attorney's fee of ten per cent of the amount of the decree he may recover, to be taxed as part of the costs in the case.

9. TAXES: FORECLOSURE OF LIEN: ATTORNEY'S FEE. Whether a holder of a tax lien, on obtaining a decree foreclosing the same, is entitled to an attorney's fee under section 181 of the revenue law of 1879 is not to be determined by the status of the lien-holder in the case. Whether he be a plaintiff or a defendant is wholly immaterial. The test as to whether such lien-holder is entitled to an attorney's fee is whether the lien foreclosed has for its basis a valid tax sale. If the sale on which the lien is based was valid, then the holder of the lien is entitled to an attorney's fee. If the sale was invalid, he is not entitled to the attorney's fee.

10. ———: INVALID SALE: ACTION TO CANCEL CERTIFICATE: TENDER: BURDEN OF PROOF: EVIDENCE. An owner of real estate brought suit to cancel a tax sale certificate and taxes assessed against said' real estate for certain years and paid by the holder of the certificate. The owner alleged in his petition, in general terms, that the tax sale certificate was void ; that the taxes paid were never assessed against the real estate and were not liens thereon. At the same time he tendered into court an amount of money which he alleged was sufficient to pay and discharge said tax liens for said years. The holder of the tax certificate admitted its invalidity, asked to be subrogated to the rights of the public to the lien for the taxes on which said certificate was based, and taxes paid by him assessed against said real estate by reason of his purchase thereof, and prayed to foreclose said tax lien and taxes against said real estate. *Held*, (1) That the owner, by his tender of a sum of money in payment of the taxes for certain years, thereby admitted that the taxes appearing against said real estate on the treasurer's books for said years were legally assessed against it; (2) that the burden of showing that any of the taxes for any of said years had never been assessed against the real estate, were for any cause illegal, had been discharged, or that they were not liens upon the real estate, was upon the owner; (3) that the holder of the tax sale certificate and tax liens, to prove his case and establish his lien, was only required to prove what amount of taxes he paid, when he paid them, and the tax sale certificate and tax receipts of the treasurer of the county were competent evidence for that purpose.

APPEAL from the district court of Douglas county. Heard below before IRVINE, J.

*John L. Webster*, for plaintiff.

*Henry W. Pennock*, for defendant.

See opinion for citations upon the questions discussed.

RAGAN, C.

On the 13th day of August, 1889, Ralph R. Osgood purchased lots 3 and 4, in block 52, in the city of Omaha, Douglas county, from the treasurer of said county at private tax sale for the city taxes of the city of Omaha due and delinquent on said lots for the year 1888. At this time there were unpaid delinquent state and county taxes standing against these lots on the books of said county treasurer for the years 1880, '81, '82, '83, '84, '85, '86, '87, and '88, and unpaid delinquent city taxes of the city of Omaha for the years 1868, '69, '70, '71, '72, '80, '81, '82, '83, '84, '85, '86, and '87, all of which Osgood paid; and he subsequently paid as they fell due the state, county, and city of Omaha taxes against said lots for the years 1889 and 1890. From 1873 to the 25th of July, 1890, these lots were owned by one George W. Frost, or his heirs, and were sold in the year 1873 by the county treasurer of Douglas county for the delinquent state and county taxes of 1872. Sales of these lots for state and county taxes thereon for the years 1873, '74, '75, '76, and '77, or some of them, were afterwards made. The purchaser of these lots at these sales, or his assignee, paid all state and county taxes against the lots up to and including the taxes for the year 1879. All the liens acquired against these lots by these tax sales, and for payments of taxes on the lots up to and including the year 1879, finally came to be owned by one Bryant, and he, by a decree of the circuit court of the

United States for the district of Nebraska, was given a
lien against these lots for all such taxes. This decree or
judgment Bryant assigned to J. McGregor Adams, who on
July 25, 1890, became the owner of the lots by deed from
the heirs of George W. Frost. When the county treasurer
sold the lots in 1873 he did not sell them for the city of
Omaha taxes then due and delinquent thereon, nor were
the city of Omaha taxes included in any sale of the lot
subsequently made. The state and county taxes against
these lots prior to the year 1880 are in no manner involved
in this action.

Adams brought this suit in the district court of Douglas
county against Osgood, and tendered in court a sum of
money which he alleged was sufficient to pay all taxes, with
interest thereon, assessed against said lots after and includ-
ing the year 1880. He alleged in his petition, in substance,
that the lien of the city of Omaha for all taxes on these
lots prior to the year 1880 had been divested and discharged
by the sale of the lots, for delinquent state and county taxes
only, in the years 1873,' 74, '75, '76, and '77, and that the
sale made by the county treasurer of these lots to Osgood
on the 13th of August, 1889, was void, and that the city
taxes paid on said lots by Osgood for all years prior to
1880 were void or voluntary payments, and he prayed for
a decree canceling the tax sale certificate issued by the
county treasurer to Osgood on the 13th of August, 1889,
and a decree that Osgood had no lien on the lots on account
of said tax sale certificates or on account of the payment
of taxes made by him on said property for years prior to
the year 1880. Osgood filed an answer in the nature of a
cross-bill, setting out the purchase of the lots from the
treasurer of Douglas county on August 13, 1889, and the
taxes paid by him for state, county, and city purposes, as
already stated herein, and prayed the court to award him a
decree against said lots for such taxes and interests and an
attorney's fee. The district court found and decreed that

the defendant Osgood was entitled to a lien upon said lots for taxes and special assessments paid by him and assessed against said lots for the year 1880 and thereafter, and that the amount of Osgood's lien against said lots for said time should draw interest at the rate of twenty per cent per annum for two years from the dates of the payments made by him and ten per cent per annum thereafter. The court further found and decreed that Osgood was entitled to an attorney's fee of $429.24, to be taxed as part of the costs in the action. The court also found and decreed that the city taxes for the years 1868, '70, '71, and '72 upon each of said lots, and the city taxes for the year 1869 upon said lot 3, which had been paid by Osgood, were not a lien upon said lots or either of them, and that by paying said taxes Osgood had acquired no lien upon said lots. The court further found and decreed that the failure of the county treasurer to include the city of Omaha taxes delinquent on said lots for the years 1868 to 1872, inclusive, in the sale made of said lots for taxes in the year 1873, divested the lien of said city taxes from 1868 to 1872, both inclusive. From this decree both parties have appealed to this court.

1. The first question for consideration is the holding of the district court that the sale of these lots by the county treasurer in 1873, for state and county taxes only, divested the lien of the city of Omaha for the taxes previously assessed and then delinquent on the lots for the years 1868, '69, '70, '71, and '72. Section 54 of the revenue act of 1866 provided that taxes upon real property should be a perpetual lien thereon against all persons and corporations, except the United States and this state. (Revised Statutes, 1866, ch. 46, sec. 54.) This law remained in force until replaced by section 138 of the revenue law of 1879, the law now in force, which provides: "The taxes assessed on real property shall be a lien thereon from and including the first day of April in the year in which they are

levied until the same are paid." Section 116 of the reve-
nue act of 1879 provides: "The purchaser of any tract of
land sold by the county treasurer for taxes, * * * ac-
quires a perpetual lien of the tax on the land," etc. This
last section is, in substance, a re-enactment of section 61 of
the revenue law of 1869. Section 109 of the revenue act
of 1879 provides: "On the first Monday of November in
each year, between the hours of nine o'clock A. M. and four
P. M., the treasurer is directed to offer at public sale at the
court house or place of holding court in his county, or at
the treasurer's office, all lands on which the taxes levied for
state, county, township, village, city, school district, or any
other purpose, for the previous year, still remain unpaid,"
etc. This is substantially a re-enactment of section 56 of
the revenue law of 1869, in force when the county treasurer
sold the lots in question for the state and county taxes
thereon for the year 1872.

In *State v. Helmer*, 10 Neb., 25, it was held: "It is
doubtless the true intent and meaning of the [revenue] law
that lands or town lots can only be sold for taxes to those
who offer to pay and do pay the amount of all taxes 'due
on any parcel of land or town lot or the smallest portion
of the same.'"        •

In *Tillotson v. Small*, 13 Neb., 202, the facts were: Taxes
were delinquent upon certain real estate for the years 1872,
'73, '74, and '75. The county treasurer sold the lands for
the delinquent taxes of 1875 only, and a tax deed was
made to the purchaser in 1881. The county treasurer of
the county where the lands were situate subsequently sold
them to the county commissioners of that county for the
delinquent taxes for the years 1872, '73, and '74. The
commissioners assigned the certificates of purchase to Small.
Tillotson, the holder of the tax deed, then brought a suit
in equity to the district court of Nuckolls county to cancel
these certificates of sale issued by the treasurer to the county
commissioners and by them assigned to Small. It was

argued by counsel for Tillotson, as appears from the briefs that the sale of the lands by the county treasurer for the delinquent state and county taxes of the year 1875 divested and discharged the taxes for the years 1872, '73, and '74, which were not included in the sale. This court held that the treasurer had no authority to sell the lands in 1876 for the taxes of 1875, without including in such sale all taxes then due and delinquent against said lands.

In *O'Donohue v. Hendrix*, 13 Neb., 257, it was held: "Under our revenue law a sale of land can be lawfully made only by including all the taxes, interest, and costs due thereon at the time," etc.

Section 99 of the revenue law of 1854 of the state of California provided that taxes on real estate should continue a lien thereon until such taxes were paid. The supreme court of that state construed that statute in *Cowell v. Washburn*, 22 Cal., 520. The real estate involved in the controversy in the case was sold for taxes for the year 1858, and a certificate of sale issued to the purchaser. The taxes for the year 1857, though delinquent and unpaid, were not included in the sale made of the premises in 1858, and the suit was brought to restrain the tax collector from again selling the real estate for the delinquent taxes of 1857. The court held that the failure of the officer to include the delinquent taxes for the year 1857 in the sale made for the taxes of the year 1858 did not divest the lien of the taxes for the year 1857. To the same effect see *Reeve v. Kennedy*, 43 Cal., 643, and *Justice v. City of Logansport*, 101 Ind., 326.

In *Dennison v. City of Keokuk*, 45 Ia., 266, the facts were: Dennison purchased certain lots in the city of Keokuk at a sale made thereof by the city for taxes of one year. At the time of his purchase there were unpaid and delinquent city taxes against the lots for a number of previous years. The taxes for these previous years were not included in the sale made to Dennison. He obtained a tax

deed for the lots and brought suit against the city to quiet his title. The city claimed a lien upon the lots for the delinquent and unpaid taxes for the years prior to the year for which Dennison bought the lots. By the charter of the city of Keokuk city taxes were made a perpetual lien upon real estate upon which they were assessed until such taxes were paid. The supreme court held: "A sale for city taxes of one year does not divest the lien of the city for the unpaid taxes of prior years."

It appears, then, that under our revenue laws taxes assessed upon real estate are a lien thereon until paid, and that a sale of real estate made by a county treasurer, for delinquent taxes of one year due on said real estate, will be absolutely void if taxes assessed and delinquent against said real estate for prior years are not included in such sale. It follows from this that the sale made of the lots in controversy in this action by the county treasurer of Douglas county in 1872 to Bryant were void. We do not think that it should be held that a void tax sale for the taxes of one year divests and discharges valid taxes assessed and delinquent against such real estate for prior years. We are aware that on this question there is a conflict of authority.

The holding of the supreme court of Iowa is that a sale of land for taxes for one year discharges and frees the land from the taxes assessed and delinquent thereon for the years prior to the one for which the sale was made. (*Preston v. Van Gorder*, 31 Ia., 250; *Hough v. Easley*, 47 Ia., 330.) The statutes of Iowa make taxes on real estate a perpetual lien thereon; but their statute also provides that the county treasurer in selling real estate for taxes shall make such sale for and in payment of the total amount of taxes, interest, and costs due and unpaid on such real estate at the time of the sale.

The holding of the Wisconsin court is that a valid sale and conveyance of land for taxes under a junior assessment cuts off all former titles or liens. (*Jarvis v. Peck*, 19 Wis.,

84; *Sayles v. Davis*, 22 Wis., 225; *Eaton v. North*, 29 Wis., 75.)

In *McFadden v. Goff*, 32 Kan., 415, it is said: "A valid tax deed extinguishes and destroys all other titles and liens existing or based upon anything existing at the time of the levying of the taxes upon which the tax deed is founded."

In *Robbins v. Barron*, 32 Mich., 36, it is said: "A tax title, if valid, destroys and cuts off all liens and encumbrances previously existing against the land."

In *Langley v. Chapin*, 134 Mass., 82, it is said that "A sale of land for non-payment of taxes, if valid, creates a title paramount to any existing estate therein."

An extended review of these cases would subserve no useful purpose here. In no case which I have examined, and which holds that the sale of real estate for the taxes of one year divests the lien of taxes thereon for prior years, is there any intimation that the sale made was invalid. In Iowa the statute made the taxes on real estate a perpetual lien thereon. This fact, if not overlooked, seems to have been ignored by that court, as its decision was based solely on a section of their Code which provided that the annual sales of real estate for taxes made by the treasurer should be made for, and in payment of, the total amount of taxes due on the real estate; and while it would seem to be the duty of a county treasurer in Iowa, when making a sale of real estate for taxes, to sell it for all taxes then delinquent and due against the real estate, still it would seem that the courts of that state do not regard a sale made by the treasurer for the taxes of one year without including taxes of prior years as invalid. In some of the cases it is intimated that the rule is based on the doctrine of estoppel; that is, that the county treasurer is the agent of the public, and in making a sale of real estate for taxes that he acts ministerially; and as the law makes it his duty when he sells real estate for the non-payment of taxes to include therein all taxes then delinquent against the real estate, that the

public warrants to the purchaser that the taxes for which he has bought a piece of real estate are all the taxes that were then due and delinquent against it; and therefore the public is afterwards estopped from averring the contrary by again selling the real estate for taxes delinquent thereon at the time of the other sale. It is true that a county treasurer in making a sale of real estate acts ministerially, but that the public warrants that such sale is made for all the taxes then due on the land or in accordance with law, is not in harmony with the decided weight of authority in this country. The rule of *caveat emptor* applies to one who purchases property sold by a treasurer for delinquent taxes quite as much as it does to the purchaser of property at a judicial sale. (*Pennock v. Douglas County*, 39 Neb., 293, and cases there cited.) To our minds the argument that the public warrants that in a sale of real estate made by a county treasurer for delinquent taxes are included all taxes then due on said real estate, is not sound. Such a rule would contravene the express provisions of our statute making taxes on real estate a perpetual lien thereon until paid. Such a rule would be contrary to good public policy. It would open the door to fraud and put a premium on the carelessness of public officials. The tax books and records showing the taxes assessed and delinquent against real estate are at all times open to the inspection of every one, and the law, which every one is presumed to know, specifically enumerates what steps must be taken by a county treasurer in making a sale of real estate for delinquent taxes in order that such sale may be valid. Whatever may be the rule elsewhere, we think, under our statutes, that the only way by which a valid tax existing against real estate here can be discharged is by the payment of such tax, unless such real estate be sold for taxes and the holder of the tax lien fails to bring suit to foreclose the same for five years after the expiration of the time to redeem. (*Alexander*

*v. Shaffer*, 38 Neb., 812); and that a void treasurer's sale made of real estate for the taxes of one year will not divest the taxes of prior years which are a valid lien thereon. We think, therefore, that Osgood is entitled to a lien upon the lots herein for the amount of all taxes which he paid thereon for the years prior to the year 1880, and which taxes were legally levied and assessed, unpaid or delinquent, and therefore liens upon said real estate.

2. The second point for consideration in this appeal is whether or not the district court was correct in its finding and decree that Osgood should be allowed interest upon the taxes paid by him at the rate of twenty per cent per annum for a period of two years from the date of such payments. And this leads us to inquire what rights Osgood acquired against these lots by his purchase of them at private tax sale on the 13th day of August, 1889. Sections 119 and 181 of the revenue act of 1879 provide:

"Sec. 119. The owner or occupant of any land sold for taxes, or any person having a lien or interest thereon, may redeem the same at any time within two years after the day of such sale, by paying the county treasurer for the use of such purchaser, his heirs or assigns, the sum mentioned in his certificate, with interest thereon at the rate of twenty per cent per annum from the date of purchase, together with all other taxes subsequently paid, whether for any year or years previous or subsequent to said sale, and interest thereon at the same rate from the date of such payment," etc.

"Sec. 181. In any case in which the plaintiff shall recover in an action for the foreclosure of tax liens, as provided in this act, he shall be entitled to interest on each amount paid by him, and evidenced by his certificates of tax sale and receipts for taxes paid, at the rate of twenty per cent per annum from the date of each payment for the term of two years, and at the rate of ten per cent per annum on each of said amounts from and after the expiration of

said two years, and until the rendition of the decree of foreclosure, which decree shall draw interest as in other cases."

But these sections have reference to valid tax sales and liens by virtue thereof existing against real estate. The county treasurer of Douglas county, on the 13th of August, 1889, sold these lots to Osgood at private tax sale, and issued him a treasurer's certificate of such tax sale. The lots were sold to Osgood for the delinquent city of Omaha taxes due on the lots for the year 1888. The treasurer did not sell these lots to Osgood for the delinquent city of Omaha taxes of any year prior to the year 1888. At the date of this sale there were due and delinquent against these lots not only city taxes of the city of Omaha for a number of years prior to 1888, but state and county taxes for the years 1880 to 1888, both inclusive. Section 113 of the revenue act of 1879 provides: "After the tax sale shall have closed, and after the treasurer has made his return thereof to the county clerk as provided in the preceding section, if any real estate remain unsold for the want of bidders therefor, the county treasurer is authorized and required to sell the same at private sale at his office, to any person who will pay the amount of the taxes, penalty, and costs thereof for the same," etc. The county treasurer had no authority to sell these lots at private tax sale for the taxes of the year 1888, without including in such sale all the taxes then due and delinquent against the lots for taxes for prior years. The sale, then, made by the treasurer to Osgood of these lots was void. Another point deserves notice in this connection, and that is, Osgood is here seeking to foreclose a lien against these lots for the taxes of 1888, and for taxes which he paid prior and subsequent to that date, to protect the lien he acquired at the tax sale. If the treasurer had included all taxes delinquent against the lots in the sale he made thereof to Osgood, to make such sale a valid one it would still devolve upon Osgood to show

that the county treasurer had made a return to the county clerk of the public sale for delinquent taxes held by the treasurer on the first Monday of November preceding, in pursuance of section 109 of the revenue act. For until the treasurer had made such return to the county clerk he had no jurisdiction to sell the real estate at private sale. It nowhere appears in this record that the county treasurer of Douglas county, at any time prior to selling this land to Osgood at private sale, had made to the county clerk of his county a return of the public sale for taxes held in the preceding November. Osgood, then, by virtue of the purchase he made of these lots in 1888, and by virtue of the taxes paid thereon both prior and subsequent to that date to protect the lien he acquired by his purchase, became subrogated to the rights which the public had against these lots by virtue of these tax liens, and consequently became entitled to receive on the payments he made the same rate of interest, and no greater, which the taxes were drawing when he paid them. (*Pettit v. Black*, 8 Neb., 52; *Lynam v. Anderson*, 9 Neb., 367; *Miller v. Hurford*, 11 Neb., 377; *Reed v. Merriam*, 15 Neb., 323; *Merriam v. Hemple*, 17 Neb., 345; *Alexander v. Goodwin*, 20 Neb., 216; *Dillon v. Merriam*, 22 Neb., 151.)

What rate of interest were the taxes, delinquent and paid by Osgood on these lots, drawing at the date of his payments? Section 105 of the revenue act of 1879 provides: "On the first day of May of the year after which taxes shall have been assessed, all unpaid state, county, school, township, precinct, city and village taxes, except city taxes in cities of the first class, shall become delinquent, and shall draw thereafter ten per cent per annum, which interest shall be collected the same as the tax so due." For all state and county taxes, then, which Osgood paid on these lots, and which taxes became delinquent in the year 1880 or subsequently, he was entitled to interest at the rate of ten per cent per annum. Section 86, chapter 12a, entitled "Cities of the

Metropolitan Class" (Comp. Stats., 1893), provides: "On the first of July next succeeding the levy thereof, all unpaid city taxes in cities of the metropolitan class shall be and become delinquent, and shall thereafter draw interest at the rate of one per cent per month, payable in advance, which interest shall be collected the same as the tax due," etc. This section is a re-enactment of section 30, chapter 8, entitled "Cities of the First Class," which went into effect on the 28th of March, 1873. It follows from this that on all delinquent city of Omaha taxes paid by Osgood, and which taxes became delinquent in 1880, or since that time, he should be allowed interest at the rate of twelve per cent per annum. Sections 52 and 53 of the revenue act of 1866 were as follows:

"Sec. 52. On the first day of May of the year after which taxes shall have been assessed, all unpaid taxes shall become delinquent and shall draw interest at the rate of ten per cent per annum from the date of such delinquency.

"Sec. 53. To all taxes which remain unpaid at the time the same become delinquent, there shall be added, as a penalty, ten per cent on the amount so remaining unpaid, which shall be added to the amount assessed, and collected by the county treasurer."

On all taxes, then, paid by Osgood on these lots, which taxes were due and delinquent prior to the year 1869, he should be allowed interest on the amount paid at ten per cent per annum. By section 50 of the revenue act of 1869, and by section 30 of chapter 8, entitled "Cities of the First Class," passed and approved March 28, 1873, taxes became delinquent on the first day of May in the year after they were levied, and drew interest from the date they became delinquent at the rate of twelve per cent per annum. On all taxes paid on these lots by Osgood, which taxes became delinquent in the year 1869, or in any year subsequent thereto until and including the year 1879, he should be allowed interest at the rate of twelve per cent per annum.

3. A further question is whether Osgood was entitled to an attorney's fee of ten per centum of the amount of the decree awarded him by the court on his tax lien and for taxes paid in support thereof.   Section 181 of the revenue act of 1879 provides that when a plaintiff shall recover in an action brought to foreclose a tax lien, that at the time of the rendition of such decree the court shall award him an attorney's fee of ten per cent thereof to be taxed as part of the costs in the case.   The argument of appellant Adams is that Osgood has not brought suit to foreclose a tax lien within the meaning of said section ; that he, Adams, brought the suit to cancel the liens held by Osgood ; and although the latter filed an answer in the nature of a cross-petition praying for a foreclosure of his lien, he is not a plaintiff within the meaning of the statute, and therefore not entitled to the attorney's fee.   Whether the holder of a tax lien on obtaining a decree foreclosing the same is entitled to an attorney's fee under said section 181 is not to be determined by the status of the lienholder in the case. Whether he be a plaintiff or a defendant is wholly immaterial.   To be entitled to the attorney's fee he must obtain a decree foreclosing a tax lien in his favor, and the true test as to whether he is entitled to an attorney's fee is whether the lien foreclosed has for its basis a valid. tax sale.   If the sale made was invalid, then the holder of the lien is not entitled to the attorney's fee.   If the sale made was valid, then the holder of the lien is entitled to an attorney's fee of ten per cent of the amount of the decree recovered. The decree may embrace taxes upon the real estate paid by the holder of the tax lien to protect the same, and such taxes may have been liens upon the real estate prior or subsequent, or both, to the date of the tax sale.   The lien of the holder may be an invalid tax deed the test still remains as to the attorney's fee whether the sale on which the deed is based was a valid one.   In the case at bar, as already seen, the lien of Osgood is based on an invalid tax

sale, and therefore he is not entitled to an attorney's fee to be taxed as part of the costs in his case. The tax sale being invalid, Osgood's rights and only rights are those of the public to which, by reason of the invalid tax sale, he became subrogated. This rule is not in conflict with *Otoe County v. Brown*, 16 Neb., 398. It was held in that case that where a county had purchased real estate for taxes and sought to foreclose the lien that it was not entitled to an attorney's fee to be taxed as part of the costs. It appears, however, from a statement of the facts of the case, that the sale made of the lands for taxes did not include all taxes delinquent at the time against the real estate. The conclusion reached in that case was correct and in harmony with the rule just announced for the reason that the lien acquired by the county against the real estate was based on an invalid tax sale thereof, although the decision is not put upon that ground. *Towle v. Shelly*, 19 Neb., 632, is a case in harmony with the rule we have announced in this case, although it is not stated in the opinion that the court reached the conclusion which it did because the lien foreclosed was based upon a valid tax sale of the real estate. *Wygant v. Dahl*, 26 Neb., 562, is another case in harmony with the rule announced in the case at bar, although it is not stated in the opinion that the defendant, who filed a cross-petition to foreclose a tax lien, and who was awarded by the court an attorney's fee of ten per cent of the amount of the decree recovered by him, was entitled to such decree by reason of the fact that his tax lien was based upon a valid tax sale. In *Stegeman v. Faulkner*, 42 Neb., 53, it was distinctly held: "A purchaser at an invalid tax sale is not entitled to have taxed in his favor an attorney's fee as part of the cost of the foreclosure of the lien to which he has by payment become subrogated." It follows, therefore, that the learned district court erred in allowing Osgood an attorney's fee to be taxed as part of the costs in this case.

4. Finally, it is suggested by the appellant Adams that the decree of the district court in favor of Osgood is not supported by sufficient competent evidence. This contention is based upon the fact that Osgood introduced in evidence the certificates of tax sales of the lots issued to him by the county treasurer of Douglas county, and the tax receipts issued to him by the treasurer for taxes he paid on said lots, and which taxes were delinquent; but Osgood offered no proof to show that the taxes called for by said certificates of tax sales and tax receipts had been legally levied and assessed against the lots, and the argument is that these tax receipts were not competent to prove the existence of the taxes. As a general principle, tax receipts alone are not evidence of the existence of the taxes to which they relate; that is, the tax receipt does not prove that the taxes for which it calls were legally assessed or levied upon the property. (*Miller v. Hurford*, 13 Neb., 13; *Clark v. Blair*, 14 Fed. Rep., 812.) The only taxes involved in this suit to which appellant's argument is applicable are the taxes delinquent on these lots in the year 1880 and since then, as these were the only taxes for which the district court gave Osgood a lien. Adams, in his petition filed herein, tendered into court a sum of money which he alleged was sufficient to pay the principal and interest of these taxes. This tender, then, was an admission on the part of Adams that the taxes assessed and delinquent against the property for the year 1880 and since then, and which Osgood had paid, were valid liens against the lots. (*Huntington v. Ziegler*, 2 O. St., 10.) The allegation in Adams' petition is that Osgood had paid to the county treasurer for "pretended delinquent county taxes and for a pretended sewer tax, and for pretended delinquent city taxes," certain sums of money for certain years including the year 1880, and subsequently; and the petition also alleged that all city taxes for all years prior to 1880 were illegal; and it must be remembered that Adams brought this suit to

quiet his title to these lots as against these taxes. The burden, then, was on him to show that any of the taxes alleged by him to be void were illegal taxes or had been paid. (*Towle v. Holt*, 14 Neb., 221; *Dillon v. Merriam*, 22 Neb., 151.) If an owner of real estate should file a bill in equity to cancel a mortgage which appeared of record against such real estate, and allege in general terms that such mortgage was a forgery, and the defendant in his answer to such petition should allege that such mortgage was a valid one, and ask to have it foreclosed, then it is clear that the existence of the mortgage of record would stand as admitted by the owner, and the burden would be upon him to prove that such mortgage was in fact a forgery before he would be entitled to a decree for its cancellation. The rule is the same in a case like the one at bar. Here, Adams brings a suit to cancel certain taxes and tax liens on his real estate, and he alleges, in general terms, that some of these taxes were never assessed, and that all the taxes are illegal and void, and do not constitute liens upon his real estate. Osgood, by his answer, sets out his purchase of Adams' real estate at a sale made thereof for these taxes, and his payment of other taxes to protect the lien he acquired by such purchase, and asks to have the lien which he acquired thereby foreclosed against the real estate. Adams, then, by his pleading and his position in court, admitted that these taxes stand assessed against this property on the tax books of Douglas county, and the burden was on him to show that the taxes were wrongfully on said books; that they had in fact never been levied; that they had been paid or otherwise discharged, or, for some reason, that they were not liens upon his real estate; and until he did make such proof he was not entitled to a decree cancelling them. Adams having admitted by his pleading that the taxes which Osgood had paid existed on the tax records of Douglas county, and that Osgood had paid these taxes, and having offered no proof that the taxes

had not been assessed, or that for any reason they were illegal, or that they had been discharged, Osgood, then, to make his case and establish his lien, was only required to prove what taxes he paid, when he paid them, and the tax receipts of the treasurer of Douglas county were competent evidence for the purpose.

There are some other questions discussed in the briefs of counsel which we deem it unnecessary to examine at the present time. The decree of the district court is reversed and the cause remanded for further proceedings in accordance with this opinion; the parties to each pay one-half the costs of this appeal.

JUDGMENT ACCORDINGLY.

IRVINE, C., not sitting.