P. L. JOHNSON, APPELLEE, V. J. B. FINLEY, TRUSTEE, ET AL., APPELLANTS.

FILED APRIL 21, 1898.    No. 8042.

1. **Tax Sales:** TREASURER'S RETURN. Until a county treasurer has made a return to the county clerk of his county of the public sale of lands for taxes held by him in pursuance of section 109, chapter 77, Compiled Statutes 1897, he cannot make a valid private sale of lands for the delinquent taxes due thereon.

2. ——: ——. Where a private tax sale of real estate is invalid because of the failure of the county treasurer to first make such return, the purchaser thereat is subrogated to the rights which the public had against such real estate, and entitled to enforce a lien against the same for the taxes paid at the sale and for all prior and subsequent taxes existing against the real estate and paid by him because of such purchase. *Adams v. Osgood,* 42 Neb. 450, followed.

3. **Taxes:** MISTAKE OF COLLECTOR: ACTION FOR DAMAGES. The public cannot be deprived of its revenue nor its lien for taxes against property because of the mistake of a tax collector in not collecting all that is due against such property.

4. ——: LEVY IN CITY: PUBLICATION OF ORDINANCE. The failure to publish an ordinance of a city of the metropolitan class—"An ordi-

nance making the annual levy of taxes for the city of Omaha for the year 1892"—in the official newspaper thereof, as required by section 133, chapter 12a, Compiled Statutes 1895, did not prevent such ordinance from becoming a law, it having been duly passed and approved, and signed by the mayor, and a section thereof providing that the ordinance should be in force from and after its passage.

5. **City Ordinance: PROOF OF ENACTMENT.** The method provided by section 124, chapter 12a, Compiled Statutes 1895, for proving the existence or enactment of an ordinance of a city of the metropolitan class is not exclusive, but one desiring to prove such an ordinance may pursue the statutory method or resort to common-law methods of proof.

APPEAL from the district court of Douglas county. Heard below before DUFFIE, J. *Affirmed.*

*John T. Cathers*, for appellants.

*R. W. Breckenridge* and *Saunders, Macfarland & Dickey*, contra.

RAGAN, C.

P. L. Johnson brought this suit in the district court of Douglas county against J. B. Finley and others to foreclose a tax lien. He had a decree as prayed, and Finley and others have appealed.

1. The revenue law of the state provides that the county treasurer of each county shall, on the first Monday in November of each year, offer at public sale all lands on which the taxes levied for the previous year still remain unpaid (Compiled Statutes 1897, ch. 77, art. 1, sec. 109); that the treasurer shall keep a sale book showing the lands sold, to whom, and for what amounts, and, on or before the first Monday in December of each year, shall file in the office of the county clerk of his county a return of the sales made (section 112 of said chapter 77); and that after the public tax sale shall have closed, and after the treasurer has made his return thereon to the county clerk, as provided in said section 112, if any real estate remains unsold for want of bidders, the

county treasurer is authorized and required to sell the same at private sale (section 113 of said chapter 77). In the case at bar the county treasurer, on January 7, 1892, sold certain real estate at private tax sale for the delinquent taxes of the year 1890, having failed to make and file with the county clerk the report of the public tax sale held in 1891, as required by said section 112. The appellants now insist that the decree of the district court must be reversed for the reason that the purchaser at the private tax sale acquired no lien upon the real estate sold thereat.

The argument is that the provisions of the revenue law are mandatory, and that until the treasurer had made and filed with the county clerk the report of the public tax sale, he had no jurisdiction to sell real estate for taxes at a private sale; that such sale was consequently not voidable merely, but absolutely void. It is true that the county treasurer had no authority to sell real estate at private tax sale until the real estate had been first offered at public tax sale and he had made and filed with the county clerk his report of such public tax sale; and a private tax sale made without the treasurer having first complied with this requirement of the revenue law was an invalid sale, and the purchaser thereat, if he finally obtained a tax deed based on the certificate of purchase, would not acquire a legal title to the real estate if the deed was in all other respects valid. But notwithstanding the private tax sale was invalid because the treasurer had not filed his report of the public tax sale, the effect of the private tax sale was to transfer to the purchaser thereat the lien which the public had against the real estate for the taxes for which it was sold. By such sale the purchaser became subrogated to the rights and liens of the public against the real estate for the delinquent taxes thereon. (*Dillon v. Merriam*, 22 Neb. 151; *Adams v. Osgood*, 42 Neb. 450.)

2. A second argument of appellants is that the taxes for which the real estate was sold at private tax sale,

and the taxes subsequently paid thereon by the purchaser thereat, had been, at the time of such sale and payment, already paid by the appellants. This was one of the defenses interposed by appellants to this action, and the burden was upon them to establish this defense, and we think they failed to do so. It is not claimed by the appellants, as we understand it,—and if that is their claim the evidence does not sustain it,—that there were in fact no taxes due upon this real estate at the time it was sold, nor that the subsequent taxes, paid by the purchaser at the private tax sale, were not due against the property. But the claim of the appellants seems to be this: That in 1890, and again in 1892, they furnished to the tax collector a list of their property in Douglas county, requesting him to state what amount of money was necessary to pay the taxes thereon; that the tax collector did furnish them a statement showing what taxes were due upon the appellants' real estate, including the real estate involved in this action, and that the appellants then and there paid to the tax collector all that he claimed was due. The argument is that, if the treasurer, through neglect or mistake, failed to make a correct statement as to the amount of taxes due from the appellants on their property, and the appellants paid all the tax collector claimed, then the property could not afterwards be sold for unpaid taxes existing against it, which the treasurer had omitted from the statement of taxes furnished by him to the appellants. We do not think the public can be deprived of its revenue nor its lien for taxes against property because of the mistake of a tax collector in not collecting all that is due. If the property owner suffers any loss or damage by reason of the neglect of the tax collector in this respect, he may have a cause of action against the tax collector and his sureties for such damages. Taxes upon real estate are made a perpetual lien thereon, and the property cannot be relieved from this burden except by a payment of the taxes, or, in case it has been

sold, the neglect of the purchaser to bring an action to foreclose his lien until after the statute of limitations has run. (*Alexander v. Shaffer*, 38 Neb. 812; *Adams v. Osgood*, 42 Neb. 450; *Browne v. Finley*, 51 Neb. 465.) The failure then of the county treasurer to make to the appellants a correct statement of the amount of taxes due upon their real estate, coupled with the payment by the appellants of all taxes demanded by the tax collector, did not amount to a payment and discharge of the taxes for which the real estate was sold, but discharged the taxes on the appellants' property to the extent of money actually paid by them. (*Richards v. Hatfield*, 40 Neb. 879.)

3. A third argument is that the finding of the district court that the taxes for which the property was sold had been legally assessed and levied against the same is not sustained by sufficient evidence. We think it is.

4. Parts of the subsequent taxes paid by the purchaser at the private tax sale in 1893 were city of Omaha taxes for the year 1892. Another argument is that the finding of the district court that these city taxes of 1892 were legally assessed or levied against the property, and therefore a lien upon it, is unsupported by sufficient evidence. The appellee, to prove the legal levy and assessment of the 1892 city taxes, introduced in evidence an ordinance of the city of Omaha passed and approved February 9, 1892, and signed by the mayor February 10, 1892. This ordinance was entitled "An ordinance making the annual levy of taxes for the city of Omaha for the year 1892." The argument is that this ordinance did not prove anything, because it was not shown when or that the ordinance ever went into effect. The contention is that the ordinance, before it could take effect, must have been published in the official newspaper of the city of Omaha. Section 133, chapter 12a, Compiled Statutes 1895, the statute then in force governing the city of Omaha, is relied upon to sustain this contention. The section provides: "The council, at the commencement of each year, or as soon thereafter as may be, shall

designate some daily newspaper printed in the city as the official paper of the city, in which shall be published all general ordinances and all notices and other proceedings required by law or ordinance to be published." Conceding that the ordinance in question is a general ordinance, within the meaning of said statute, it is to be observed that the statute does not provide, either in express terms or by implication, that a general ordinance shall not be in force or take effect as such until it has been published in the official paper of the city; and it is not claimed that the ordinance in question, within the meaning of the statute just quoted, is a notice or proceeding required by any statute or ordinance to be published. Section 15 of said chapter confers power upon the mayor and council to pass, amend, or repeal any or all ordinances not repugnant to the constitution and laws of the state. And section 123 of said chapter provides: "All ordinances of the city shall be passed pursuant to such rules and regulations as the council may prescribe. * * * *Provided further*, That no ordinance granting any franchise shall be passed until at least two weeks shall have elapsed after its introduction, nor until after the same has been published in the official paper of the city." It would seem from this section that unless the ordinance passed grants a franchise, the city council might provide that it should take effect and be in force from and after its passage, and that the failure to publish a general ordinance in the official paper would not prevent such ordinance taking effect if it provided that it should be in force and take effect from and after its passage. By section 14 of the ordinance in question it was provided that this ordinance shall take effect and be in force from and after its passage. A second argument in support of the contention— the finding of the district court that the city taxes of 1892 had been legally assessed lacks sufficient evidence— is that the enactment of the ordinance in question was not proved. On the trial the appellee called the city

clerk as a witness, who testified, without objection, that the ordinance in question here was an ordinance making a levy of taxes for the city of Omaha for the year 1892, and that the ordinance was one or a part of the records of the office of the city clerk of the city of Omaha, and then introduced in evidence the original ordinance passed by the mayor and council of the city of Omaha. The argument of the appellants is that the enactment or existence of this ordinance could be proved, and proved only, in the manner provided by section 124 of said chapter 12a, which is as follows: "All ordinances of the city may be proven by the certificate of the clerk under the seal of the city, and when printed or published in a book or pamphlet form, and purporting to be published or printed by authority of the city council, shall be read and received in all courts and places without further proof." The ordinance in question, it appears, had not been printed or published in book or pamphlet form; at least there was no attempt to prove the ordinance by the introduction of such book or pamphlet. Nor was it attempted to prove the ordinance by the certificate of the city clerk under the seal of the city. But we do not understand that the existence or passage of an ordinance of a city of the metropolitan class can be proved only in the method provided by said section 124. Certainly, the original ordinance and the proceedings of the city council, showing its passage and approval, are as competent evidence that the ordinance was passed and approved as a certificate of the city clerk, under the seal of the city, that the ordinance attached to the certificate was a copy of the original ordinance on file in his office. We think that when a party desires to prove the existence of an ordinance of a city of the metropolitan class he may pursue the method pointed out by said section 124 or he may resort to common-law methods of proof. (*Clough v. State*, 7 Neb. 320.) The decree of the district court is

AFFIRMED.