EMANUEL SPIECH, APPELLEE, V. IDA TIERNEY ET AL.,
APPELLEES, IMPLEADED WITH JOHNSON COUNTY, AP-
PELLANT.

FILED NOVEMBER 3, 1898.   No. 8374.

1. **Estates: TENANT FOR LIFE: TAXES.** As between the life tenant and
the owner of the fee, it is the duty of the former to pay all taxes
charged against the land during the continuance of his estate.

2. **Lien of Taxes.** The revenue law of 1871 declared real estate taxes
to be a perpetual lien on land against which they were levied.
By subsequent legislation this lien has been preserved and con-
tinued in force.

3. **Taxes: COLLECTION.** It was made the duty of the county treasurer
by section 50 of the act of 1871 to collect delinquent real estate
taxes by seizure and sale of the owner's chattels, if any could be
found.

4. ———: **LIEN ON REALTY: COLLECTION: NEGLECT OF COLLECTOR.** But
the failure of the treasurer to discharge such duty by distraining
the personalty of the life tenant did not divest the lien of the
taxes from the reversioner's interest in the land.

5. ———: ———: ———: ———. Since 1877 the county treasurer has
possessed no authority to sell personal property for taxes as-
sessed against real estate prior to that time.

6. ———: **IRREGULARITIES OF ASSESSOR.** The failure of an assessor to
attach his oath to, and return the same with, the assessment roll
are mere irregularities which do not affect the validity of the tax.

7. **Officers: PERFORMANCE OF DUTIES: PRESUMPTIONS.** In the absence
of evidence to the contrary, it will be presumed that a public
officer proceeded regularly and performed his official duties
within the law and in obedience to its mandate.

8. **Taxation: EQUALIZATION: VALUATION: INCREASE.** Where a board
of equalization, without authority, increases the valuation of real
estate as fixed by the assessor, the taxes apportioned against such
real estate will be valid only to the extent that they are based
on the original assessment.

9. ———: **DESCRIPTION OF REALTY.** Where part of a city lot is con-
demned by a railroad company for its right of way, the re-
mainder is sufficiently described, for purposes of taxation, as a
fractional lot.

10. ———: ———. A tax is void for uncertainty which is assessed
and levied against an entire city lot under the description, "part
of lot 5, in block 41."

11. ———: ———: VALIDITY OF ASSESSMENT. A tax based on an
assessment *en masse* of contiguous lots which are so situated as
to be incapable of separate valuation is not void, and affords no
just ground of complaint to the owner whose personalty was
liable for the tax at the time the same was levied.

12. ———: ———. Where land owned by one person is assessed with
the land of another, under one aggregate valuation, so that
neither owner can determine the amount for which his property
is liable, the entire tax is void.

APPEAL from the district court of Johnson county.
Heard below before BUSH, J. · *Reversed.*

*J. W. Deweese, F. E. Bishop,* and *J. Hall Hitchcock,* for
appellant.

*Fred'k Shepherd, Hugh Lamaster,* and *M. B. C. True,*
contra.

SULLIVAN, J.

In 1872 Mary A. Tierney, being the fee owner of lots 5,
6, and 7, in block 41, of the city of Tecumseh, in Johnson
county, died intestate, leaving her surviving, Kyron
Tierney, her husband, and six minor children. As tenant
by the curtesy Kyron occupied and enjoined the use of
the lots from 1871 to 1894, but did not pay the taxes
levied against the same except for the years 1877 to 1881.
In 1893 William Cummings purchased at execution sale
the interest of George Tierney in the premises, and
thereby became the owner of an undivided one-sixth of
the same. He then, after the death of Kyron Tierney,
brought this action to partition the property and made
the county of Johnson a party defendant. There is no
dispute between the plaintiff and the heirs regarding
their respective interests. The entire controversy in the
case arises out of the claim of Johnson county for taxes.
The district court appointed Corydon Rood, Esq., referee
to ascertain the liens and incumbrances existing against
the lots, and from his report it appears, in addition to
the facts already stated, that the taxes from 1871 to

1877 might have been collected by the seizure and sale of Kyron Tierney's personal property. The district court was of the opinion that the taxes for these years had ceased to be a lien on the premises, and disallowed the claim of Johnson county therefor. The correctness of this holding is the first question presented for decision by the appeal. Section 50 of the revenue act in force during the period in question is as follows: "On the first day of May of the year after which taxes shall have been assessed, all unpaid state, county, school, precinct, city, and village, except city taxes in cities of first class, shall become delinquent, and shall draw thereafter one per cent per month interest, which interest shall be collected the same as the tax so due, and it shall be the duty of the county treasurer, or any other person charged with the collection of delinquent taxes, to proceed as soon after the first day of May as practicable to make such delinquent tax out of the personal property of such delinquent, if any such property can be found; and this provision shall apply as well to the taxes assessed on real estate and remaining unpaid, as to delinquent taxes assessed on personal property, and the remedy to be pursued shall be the same as provided in sections forty-nine and fifty-two of this act; and the treasurer shall be entitled to five per cent additional compensation for making such collection, to be paid by such delinquent, and also the fees now prescribed by law." (General Statutes 1873, p. 916, ch. 66, sec. 50; Session Laws 1871, p. 81, sec. 1.) Other sections of the act made taxes upon real property a perpetual lien thereon "against all persons and bodies corporate," and required every person subject to taxation to attend at the treasurer's office and pay his taxes without demand.

The proposition for which appellees contend is that the failure of the treasurer to collect the taxes by distress and sale of Kyron Tierney's personalty divested the lien from their reversionary interest in the land. We do not think it did. As between the heirs and the tenant for

life, it was undoubtedly the duty of the latter to pay all taxes assessed against the land during the continuance of his estate. (*Disher v. Disher*, 45 Neb. 100; *Prettyman v. Walston*, 34 Ill. 175; *Thompson v. McCorkle*, 136 Ind. 484, 34 N. E. Rep. 813; 1 Washburn, Real Property secs. 96, 97.) This was a duty due from Kyron Tierney to the owners of the fee, and one which they might by an appropriate action enforce at any time. The taxes were not a lien only upon the particular estate of the life tenant. They were a lien on the land itself and were payable at the treasurer's office without demand. While section 50 of the act of 1871 remained in force it prescribed the remedy for enforcing payment of all land taxes. No other remedy could be then pursued. The land could not be sold until the personalty of the delinquent owner had been first exhausted. But when section 50 was repealed, in 1877, the right and the duty of the treasurer to seize chattels for the satisfaction of taxes assessed against real estate no longer existed. (*State v. Cain*, 18 Neb. 631; *County of Lancaster v. Rush*, 35 Neb. 119.) The remedy was modified by the repealing act, but the right remained— the lien of real estate taxes was fully preserved and by subsequent legislation has been continued in force. The duty of collecting taxes at the time named in the statute was not imposed on the treasurer of Johnson county for the benefit of these reversioners, but rather to enable the state and municipal or political corporations to which the taxes belong to promptly secure the revenues necessary to meet their current expenses. The treasurer was a public agent, and his duty in this respect was to his principal. The appellees can ground no equity upon his failure to discharge an obligation laid upon him by law for the benefit of the public. The statute made the taxes a perpetual lien, which no mere inaction on the part of the treasurer could release or divest. In *Adams v. Osgood*, 42 Neb. 450, it is said: "Whatever may be the rule elsewhere, we think, under our statutes, that the only way by which a valid tax existing against real estate here can

be discharged is by the payment of such tax, unless such real estate be sold for taxes and the holder of the tax lien fails to bring suit to foreclose the same for five years after the expiration of the time to redeem." The recent case of *Johnson v. Finley*, 54 Neb. 733, 74 N. W. Rep. 1080, is to the same effect. It was there said: "Taxes upon real estate are made a perpetual lien thereon, and the property cannot be relieved from this burden except by a payment of the taxes, or, in case it has been sold, the neglect of the purchaser to bring an action to foreclose his lien until after the statute of limitations has run." Our conclusion upon this branch of the case is that the failure of the treasurer to make the taxes, for the years in question, out of the personal property of Kyron Tierney, did not discharge such taxes nor release the land from the lien thereon.

The referee found that the assessor's oath was not attached to the assessment roll for the year 1874, and, in view of this finding, it is claimed that the tax for that year is without any legal basis and absolutely void. Conceding that the appellant is in the attitude of a plaintiff seeking to foreclose a lien, and that it was required to furnish affirmative proof of every fact essential to its cause of action, we do not think it has failed to prove a valid tax for the year in question. It was not necessary to show that the assessor took the oath which the statute made it his duty to take. He was a public officer, and it will be presumed, in the absence of evidence to the contrary, that he proceeded regularly and performed his official duties within the law and in strict obedience to its mandate. The fact that the oath was not annexed to the assessment book is of slight consequence and altogether insufficient to overthrow the presumption that the oath was taken. Upon this question *Twinting v. Finlay*, 55 Neb. 152, 75 N. W. Rep. 548, is decisive. In that case NORVAL, J., delivering the opinion said: "It is not alleged in the answer, nor was it proven on the trial, that the assessor did not make oath to his return at the

time he deposited the same with county clerk. The mere failure to attach the assessor's oath to the assessment roll did not invalidate the tax based on such assessment. The omission was an irregularity merely." To the same effect and precisely in point is the earlier case of *McClure v. Warner*, 16 Neb. 447.

In the year 1876 the valuation fixed by the assessor upon the lots in question was $700. The county commissioners, sitting as a board of equalization, increased this valuation to $1,300, without notice to any of the parties. This action of the board was unauthorized and utterly null. It was an attempt to deprive the appellees of their property without due process of law. In the administration of the revenue laws there is no more justice in taking property by increasing its valuation as fixed by the assessor, without notice to the owner and an opportunity to be heard, than there would be in seizing the same property for the satisfaction of a judgment rendered without service of process. In the case of *Sioux City & P. R. Co. v. Washington County*, 3 Neb. 30, this question was considered by the court and the conclusion reached that the board of equalization was without authority to increase the valuation of property returned by the assessor, without notice to the person whose rights and interests would be affected thereby. As to the correctness of that decision we entertain no doubt. It rests upon a fundamental principle of justice which is imbedded in the constitution of every state. It does not follow, however, from this conclusion that the entire tax levied against the lots for the year 1876 was and is void. The board being without jurisdiction, its action was ineffective and barren of legal results. In contemplation of law the valuation fixed by the assessor remained unchanged. The resolution of the commissioners, making the tax levy, operated on that valuation and charged the land with a valid tax on the basis of the original assessment.

In 1881 the Republican Valley Railroad Company con-

demned for its right of way the south eighty feet of lots
6 and 7 and obtained a deed therefor from Kyron Tierney
and Maria Tierney, his wife. This deed and the con-
demnation proceedings were recorded in the office of the
county clerk of Johnson county, and the lots were, for
1882 and subsequent years, listed and taxed as fractional
lots. It is contended that the description, "part of lots
6 and 7," is too indefinite, and that the tax is void because
it cannot be determined with certainty which part of the
lots were assessed and taxed. After the condemnation
proceedings the south eighty feet was not subject to as-
sessment and taxation, except as a part of the railroad
company's right of way. This strip, within the meaning
of the revenue law, ceased to be a part of lots 6 and 7.
The remaining portion only was to be entered on the as-
sessment roll and valued for taxation. The law required
the heirs, or their guardian if they were minors, to list
the property, and directed that it be assessed in the name
of the owners. The contrary not appearing, we will pre-
sume that these provisions of the statute were complied
with, and if they were, it would seem that the public
records afforded, at all times, pretty conclusive evidence
of the identity of the land against which the efforts of
the taxing authorities were directed. In *Kershaw v.
Jansen*, 49 Neb. 467, the description by which the lots
were taxed was that contained in a plat which had been
previously vacated. The court held the description suffi-
cient, saying in the course of the opinion "that all prop-
erty is legally liable to taxation, and that where, for pur-
pose of taxation, a description is used so certain in its
terms that it must, as to the taxpayer, have apprised
him of the proceedings and of the land assessed, he can-
not avoid his share of the public burden merely because
there is nothing of record which ascertains the property
described." In *Woodside v. Wilson*, 32 Pa. St. 52, it was
held: "The designation will be sufficient, if it afford the
means of identification, and do not positively mislead
the owner." In *Chiniquy v. People*, 78 Ill. 570, the court

held that property described as the east end of blocks 99 and 100 was a good description for the purpose of taxation, and construed it as meaning the east half of the blocks. Other cases sustaining the validity of taxes levied against property somewhat vaguely described are *Hannah v. Collins*, 94 Ind. 201; *Bryant v. Estabrook*, 16 Neb. 217; *Roads v. Estabrook*, 35 Neb. 297. The owners of the property were not misled, or in any way prejudiced, because the description under which the lots were assessed and taxed for several years lacked completeness and precision, and the taxes are not, for that reason, invalid. The assessment and taxation of lot 5 for 1882 and 1883 was under this description: "Part of lot 5." This designation, considered by itself or in connection with the evidence contained in the record before us, furnishes no means by which we can determine, or even conjecture, what portion of the property is charged with the taxes. It was not a fractional lot. It was all owned by the heirs of Mary A. Tierney. It was all subject to taxation, yet only a part of it was taxed. We cannot say what part, and therefore hold that the taxes are void. (*Massie v. Long*, 2 O. 287; *Mathews v. Thompson*, 3 O. 272; *Ronkendorff v. Taylor*, 4 Pet. [U. S.] 349; *Burchard v. Hubbard*, 11 O. 316; *Raymond v. Longworth*, 14 How. [U. S.] 76; *People v. Flint*, 39 Cal. 670; *Atwell v. Zeluff*, 26 Mich. 118; *Sims v. Warren*, 67 Miss. 278.)

In 1871 and 1876 the three lots were assessed as an entirety, and taxes apportioned against the property on the gross valuation thereof. It is argued on behalf of the appellees that this method of taxation was unauthorized and that the taxes for those years cannot be enforced. We think otherwise. The lots were contiguous. They may have been so occupied, used, and improved that a valuation and sale in distinct parcels would not have been practicable. They were owned by the same parties, and the taxes were not merely a charge against the land. The entire personal estate of the owners, within the county, was liable for their payment. Under these cir-

cumstances we cannot see any just ground for complaint because the lots were not separately valued and a tax based on such valuation apportioned against each. In *Mix v. People*, 116 Ill. 265, it was held under a statute requiring a separate valuation that the presumption would be indulged in favor of the proceedings of the assessor; that the lots were so situated that their valuation could not be separately determined, as if one building had covered part of both lots. In *Dodge v. Emmons*, 34 Kan. 732, the supreme court of Kansas, considering the question now before us, say: "The mere fact that there are two descriptions does not determine that there were more than a single piece or parcel of land within the meaning of the tax laws. That is to be determined rather from the situation, use, and occupation of the land; and so it has been held that 'where two or more tracts of land adjoin each other, and are used and occupied as one tract, they may all be taxed together and sold together as one tract.' A section of land lying in the same taxing district, which is owned by a single individual, and which is used, occupied, and treated as a single tract, although containing many legal subdivisions, may be listed and taxed as a single tract; and so may any compact portion of the same situated and treated in like manner." (See, also, *Wright v. Cradlebaugh*, 3 Nev. 345, and *People v. Morse*, 43 Cal. 541.)

In the years 1872, 1873, and 1874 lot 7 was assessed, *en masse*, with lots 8, 9, and 10, in block 41, and, of course, no separate tax was, or could be, apportioned against it. In 1875 lots 5, 6, 7, 8, 9, and 10, in block 41, were valued at one lump sum and a single tax apportioned to all. Lots 8, 9, and 10 were not owned by the appellees. It is perfectly clear that the taxes against lot 7 for the years 1872, 1873, 1874, and 1875 were and are void, and that the taxes against lots 5 and 6 for the last named year are also void. Where land owned by one person is assessed with the land of another, under one aggregate valuation, so that neither can determine the amount of the tax for which his property is liable, the uniform hold-

ing of the courts is that the entire tax is void. (25 Am. & Eng. Ency. Law 223; *Orton v. Noonan*, 25 Wis. 672; *Howe v. People*, 86 Ill. 288; *Challiss v. Hekelnkaemper*, 14 Kan. 474; *Fisk v. Corey*, 141 Pa. St. 334.) It follows that Johnson county is entitled to a lien upon the premises for all the taxes claimed by it except (1) the taxes charged against the three lots for the year 1875; (2) the taxes charged against lot 7 for the years 1872, 1873, and 1874; (3) six-thirteenths of the taxes charged against all the lots for 1876; and (4) the taxes charged against lot 5 for the years 1882 and 1883. The judgment is reversed and the cause remanded with direction to the district court to enter a decree in conformity with the views herein expressed.

REVERSED AND REMANDED.